UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Case No. 2:09-cv-445-FtM-229SPC

---

DANIEL S. NEWMAN, as Receiver for
Founding Partners Capital Management
Company; Founding Partners Stable-Value
Fund, L.P.; Founding Partners Stable-Value
Fund II, L.P.; Founding Partners Global Fund
Ltd.; and Founding Partners Hybrid-Value
Fund, L.P.,

     Plaintiff,

v.

SUN CAPITAL, INC. a Florida corporation;
SUN CAPITAL HEALTHCARE, INC., a
Florida corporation, and HLP PROPERTIES
OF PORT ARTHUR, LLC, a Texas limited
liability company,

     Defendants.

---

## OBJECTIONS OF INVESTORS TO PROPOSED SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT

Objecting investors, Allan & Jacqueline Coleman Joint Trust, Anna N. Llewellyn,

Annandale Partners LP, Annandale Partners II LP, Barbara Bluhm Trust, Barry and Heidi

Meister, Carol M. Kellett, Cathy Passen Revocable Trust, Chariot Stable Asset Fund LP,

Cindy Faryl Serlin, Clear Fir Partners LP, Cooper Investments I, LLC, Cunningham

Children's Trust, Dakota Partners Limited Partnership, David Edelstein, MD Trustee

Profit Sharing Fund, David A. Muslin Trust, David R. & Susanna T. Edelstein, Double S

1

Partners, Douglas J. & Kathleen Cassidy, E-C Fund, LP, Edmund C. Woodbury

Revocable Living Trust & Randi S. Woodbury Revocable Living Trust, Tenants in

Common, Edward D. Fallin, Errol T. Galt, Four J Partnership, LP, FP Mallard Drive

Partners, Gary Sledge, Gerald Sloan, Glen Gibson, Haines All-Seasons Select Fund I,

LLC, Haines All-Seasons Select Fund II, LLC, Harrison Family Investments LP,

Heinrich Winter, Herbert S. Laufman Ten Year Trust, Howard Friend Declaration of

Trust, Imageworks Mfg., Inc., Individual Retirement Account For the Benefit of J.

Christopher Dance, Individual Retirement Account For the Benefit of Clanton Harrison,

III, Individual Retirement Account For the Benefit of Gregory Vrablik, Individual

Retirement Account For the Benefit of J. William Bonewitz, Individual Retirement

Account For the Benefit of John N. Brodson, Individual Retirement Account For the

Benefit of Lee V. Merrick, Individual Retirement Account For the Benefit of Maryann

Larson, Individual Retirement Account For the Benefit of Ron Mann, Individual

Retirement Account For the Benefit of Sheila M. Potiker, Individual Contributory

Retirement Account For the Benefit of Gerald O. Strauch, Individual Contributory

Retirement Account For the Benefit of William J. Cora, Individual Rollover Retirement

Account For the Benefit of Barry Wallach, Individual Rollover Retirement Account For

the Benefit of Douglas J. Cassidy, Individual Rollover Retirement Account For the

Benefit of John E. Bonnett, Individual Rollover Retirement Account For the Benefit of

Kathleen A. Olberts, Individual Rollover Retirement Account For the Benefit of Robert

M. Bales, Individual Roth Retirement Account For the Benefit of Errol T. Galt, J.

Christopher Dance, J. Mark Lozier Revocable Trust, James H. Ferguson Dec. of Trust &

Nancy B. Ferguson Dec. of Trust, Jerrold R. Glass Living Trust, Jill D. Hebert Trust,

John E. & Carolyn A. Cunningham, John M. Miller, JRM Interim Investors LP, Judith

Sommers Trust, Katherine L. Olson Trust, Katherine L. Olson Trust B, Kathleen A.

Olberts Living Trust, Kellett Family Partners LP, Kenny Allan Troutt Descendants Trust,

Kreiseder Partnership, LP, L. Hamilton Kerr III, Larry and Maryann Larson, Latta

Family Trust, Leslie T. Merrick Investment Trust, Lucille Robbins Trust, Marsha Serlin,

Mary Louise Goebel Trust, Matthew Edelstein, Maxwell Halsted Partners LLC, Meyer

Family Associates, LLC, Miats Ltd., MJA Innovative Income Fund, LP, Mt. Kenwinn

Partners CP, Muse Educational Foundation, Nancy H. Hart Rev. Trust, Nancy

Hollingsworth, Hani Jacob Saleh, Trustee, North Shore Assoc. Profit Sharing, Olive G.

Peters Living Trust, Passen Investments Inc., Paul Loeb, PP Partnership, LP, Richard J.

Pietranek Trust No. 1, Robert Scott Building Venture, G.P., Ronald Berman Revocable

Trust, Ronald Gilford Investments, Inc., SallyAnn Pratt Cowles & Frank M. Cowles

Charitable Remainder Trust, San Ysidro Investors LLC, Sandra Cooper, Scott and

Cynthia Lucking Jt.Ten., SP50 Investments LTD, Stein / Stremple Family Trust, Steven

H. & Carol S. Muslin, Steven Sandler Revocable Trust, Stiles A. Kellet, Jr., Stuart

Frankenthal, Sumnicht Money Masters Fund II, LP, Telesis IIR, LP, The Litman

Foundation, Three Sprouts LLC, TJNJH Investment Partnership, TJNJH Investment

Partnership, Vassar Point LLC, Walter E. Johnson, Walter Kreiseder Gift Trust for David

Kreiseder, Walter Kreiseder Gift Trust for John Kreiseder, Webb Shadle Memorial Fund,

Webb Shadle Memorial Fund, Willard C. McNitt, Jr., William H. Myers Profit Sharing

Plan, William H. Myers Profit Sharing Plan, Willow Springs Charitable Trust, by and

through their undersigned counsel and pursuant to this Court's December 27, 2011,

Order, respectfully submit their objections to the proposed settlement between the

Receiver and defendants in this action.[1]  The 118 investors objecting to the proposed

settlement herein represent approximately $211 million of the capital value in the

Founding Partners funds[2] at issue.[3]

## PRELIMINARY STATEMENT

The proposed settlement would have investors who collectively invested hundreds

of millions of dollars in the Founding Partners funds, along with the Receiver, release

their respective legal claims, including substantial secured interests, in exchange for

ownership interests in a new entity ("FP Designee"):

- that will own factoring companies (Sun Capital Healthcare, Inc. ("SCHI") and
  Sun Capital, Inc. ("SCI")), hospital companies and associated real estate holding

---

[1] Pursuant to the Court's Order dated December 27, 2011, requiring objectors to show proof of their status as investors, the investors objecting to the proposed settlement herein attach as Composite Ex. 1 to the accompanying Declaration of Alec Schultz documentation confirming their status as investors and limited partners in one or more Founding Partners funds (as defined below in footnote two).

[2] "Founding Partners funds" refers to Founding Partners Global Fund, Ltd., Founding Partners Stable-Value Fund, L.P. ("Stable-Value"), Founding Partners Stable-Value Fund II, L.P. and Founding Partners Hybrid-Value Fund, L.P.  All capitalized terms not defined herein have the defined meaning noted in either the parties' Joint Motion for Expedited Approval of Proposed Procedure to Obtain Court Approval of the Proposed Settlement Transaction ("Joint Motion") (D.E. # 248) or the proposed settlement agreement attached as Exhibit 3 to the Joint Motion (the "Settlement Agreement").

[3] The objecting investors seek to make clear to this Court that, as is evident from the number of objecting investors here, while roughly 90% of the investors may have supported the 120-day stay of this litigation (D.E. # 196, June 12, 2010), no such majority exists in favor of current proposed settlement.  The Founding Partners Investor Steering Committee and the members thereof whose Consents were attached to the Joint Motion in support of the settlement reflect a minority of investors, while a greater proportion of investors hereby object to the proposed settlement in the absence of reliable financial data demonstrating the value of the settlement assets.  As a condition of closing of the proposed settlement (Section 4.1(e)), investors representing two-thirds of invested capital are required to accept the settlement.

companies (Promise Healthcare, Inc. ("Promise"), Success Healthcare, LLC ("Success") and related entities) (collectively, the "Settlement Entities"), the financial strength of which, according to the Receiver, has been misrepresented by the Sun Principals[4],

- the primary business of which will be largely managed by the same individuals the Receiver has accused of financial fraud in this case,

- that will, through its subsidiaries, continue to pay out millions of dollars to the very individuals the Receiver has alleged were engaged in wrongful conduct, and

- that will, from day one, have large and unbounded obligations that are senior to the investors' interests in FP Designee, which obligations may prevent the Settlement Entities from continuing as a going concern and render the proposed settlement *worthless* to the investors,

all with ***no reliable financial information, such as audited financial statements,*** to support the value of the Settlement Entities and therefore the proposed settlement.[5]

At this time, far too little *reliable* financial information has been provided to investors to evaluate the settlement.  Given these circumstances, it would be understandable and justifiable to simply object and ask the Court to reject the proposed settlement outright.  However, because the investors joining in these Objections *do* favor an equitable and timely settlement of this action, they believe the preferred course is for the Court to compel the delivery of reliable financial information before investors are required to submit final objections and before this Court decides whether to approve the settlement.  Therefore, the objecting investors seek to obtain the following basic and customary financial information, which has yet to be provided but is urgently needed, to

---

[4] "Sun Principals" refers to Peter Baronoff, Lawrence Leder and Howard Koslow.  "Sun Entities" refers to the defendant companies in this action.

[5] The picture of the settlement's value is made even worse by confidential information that the objecting investors seek leave to file under seal as a supplement to these Objections.

make a rational and informed business decision regarding whether to object to the

proposed terms of the settlement:

- reliable financial information, including audited financial statements and interim financial statements prepared in accordance with U.S. Generally Accepted Accounting Principals ("GAAP"),[6]
- complete and unredacted disclosure schedules to the Settlement Agreement,

---

[6] Specifically, the objecting investors seek the following financial statements:
- **Audited Financial Statements**
  - The audited balance sheets of Success as of each of December 31, 2008, December 31, 2009, and December 31, 2010, and the related audited statements of operations, cash flows and members' equity (deficiency) for each of the years then ended.
  - The audited balance sheets of Promise as of each of June 30, 2007, June 30, 2008, June 30, 2009, December 31, 2009, and December 31, 2010, and the related audited statements of operations, cash flows and members' equity (deficiency) for each of the periods then ended.
- **Unaudited Financial Statements**
  - The unaudited balance sheets of each of SCHI, SCI, Superior Hospital Corporation and the other Companies (as defined in the Settlement Agreement), other than Success and Promise, as of each of December 31, 2008, December 31, 2009, and December 31, 2010, and the related unaudited statements of operations, cash flows and members' equity (deficiency) for each of the years then ended.
  - The unaudited balance sheets of each of Success, Promise, SCHI, SCI, Superior Hospital Corporation and the other Companies as of December 31, 2011, and the related unaudited statements of operations, cash flows and members' equity (deficiency) for the year then ended.
  - All unaudited financial statements should be accompanied by certifications from each of the Sun Principals as to the following:
    - The unaudited financial statements have been prepared in accordance with GAAP, subject to normal adjustments that would result from an audit thereof.
    - The unaudited financial statements present fairly in all material respects the financial condition of each of Success, Promise, SCHI, SCI and Superior Hospital Corporation and the other Companies at the dates specified and the results of their respective operations and cash flows for the periods specified.

- the amount and terms of the working capital line of credit required under the Settlement Agreement as a condition to closing the settlement transaction,

- disclosure of all third-party advisory fees paid by the defendants in connection with the proposed settlement, including, without limitation, advisory fees paid to or on behalf of the Sun Principals, the Receiver, and the Founding Partners Investor Steering Committee, and all such third-party advisory fees that are expected to be paid through or on the closing date of the settlement,

- information regarding the tax impact of the proposed settlement on the Settlement Entities and Founding Partners funds,

- a third-party valuation opinion regarding the value of the Settlement Entities based on audited financial statements and interim financial statements prepared in accordance with GAAP, and

- clarity regarding the basis on which each investor's ownership interest in FP Designee will be determined.

To approve the proposed settlement, this Court must conclude that the settlement, as well as the process for approving the settlement, is "fair." *Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998). *See also Plunkett v. Poyner*, No. 08-60953-CIV, 2009 WL 5176542, at *1 (S.D. Fla. Dec. 22, 2009) (noting denial of proposed settlement that "was not fair, adequate and reasonable"). One factor in considering fairness is determining the range of recovery at which settlement would be "fair, adequate and reasonable" and then comparing that with the recovery provided by the settlement. *Id.* Such an analysis is simply impossible without (1) reliable audited financial statements serving as the basis for determining the value of the Settlement Entities and (2) transparency regarding various elements of the proposed settlement that may materially impact such value. The Court cannot conduct any such analysis without this information, and the investors cannot make a rational and informed business decision regarding whether to object to the terms of the settlement. Therefore, basic fairness requires that

such information be provided *before* the deadline to object to the proposed settlement and before the proposed settlement is considered for final approval by this Court, as there can be no fairness without transparency.

At present, the investors are painfully aware of the hundreds of millions of dollars they have invested in the Founding Partners funds and the many millions of dollars that the Sun Principals will extract from the settlement, yet they have no knowledge of the value they will receive in exchange for paying that price if the settlement is approved.

## OBJECTIONS TO THE PROPOSED SETTLEMENT

I. **INVESTORS LACK THE RELIABLE FINANCIAL INFORMATION NECESSARY TO VALUE THE SETTLEMENT ASSETS.**

A. **Background.**

This case emanates from the alleged breaches and fraudulent actions of the Sun Principals. The alleged fraud arose in connection with the Credit and Security Agreements between Stable-Value and each of SCI and SCHI (the "Security Agreements"), pursuant to which Stable-Value loaned hundreds of millions of dollars to SCI and SCHI (collectively, the "Borrowers") for the specific purpose of factoring highly liquid, "investment grade," medical accounts receivable. The Receiver has accused the Sun Entities and their principals of the following: (1) failing to pay monthly interest to Stable-Value when due; (2) providing false financial reports to Stable-Value on the status of the Sun Entities and the collateral to the loans; (3) providing false Officer's Certificates to obtain funding from Stable-Value; (4) using loan proceeds and collateral for uses not authorized by the Security Agreements, including but not limited to, transfers of hundreds of millions of dollars to entities owned by the Sun Principals, not for the

8

purchase of accounts receivable; (5) failing to provide timely, accurate, or complete financial reports as required; and (6) providing monthly financial reports that were false and fraudulent.  (*See* Receiver's First Amended Complaint, ¶ 78 (D.E. #159-1)).[7]

The objecting investors believe, and considerable proof exists in support of the Receiver's allegations, that the Sun Entities and Sun Principals engaged in massive financial misrepresentations.  These allegations are well detailed and relate precisely to the businesses that constitute the proposed settlement proceeds.  By way of example, pursuant to the Security Agreements, the amount of loan money available to the Borrowers could not exceed the value of the defined collateral (*i.e.*, the factored accounts receivable).  Yet, as alleged by the Receiver (among others), the Borrowers evaded that requirement by misstating their financial data and the value of their assets in order to secure additional funds from Stable-Value and its investors.  As a result, over time, Stable-Value advanced loan funds that dramatically exceeded the amount of the Borrowers' collateral.  As of July 31, 2009, Borrowers owed Stable-Value approximately $608,000,000.  According to the Receiver's accountant, the factored accounts receivable (the only permissible collateral under the Security Agreements) available to secure the loans at that time totaled only $67,000,000.  Remarkably, however, the Borrowers' financial statements for the same period reported accounts receivable totaling $493,000,000.  (*See* Siegel Decl. ¶¶ 6, 12, 27 and 31).

Given the Sun Principals' alleged history of financial misrepresentations, it is imperative that investors receive reliable financial information to evaluate the financial

---

[7] While the amended complaint was not accepted for procedural reasons, its contents nonetheless reflect the views of the Receiver based on all the relevant evidence.

condition of the Settlement Entities *before* they are required to determine whether to object to the proposed terms of the settlement.

The lack of financial transparency and reliable financial information taints the entire proposed settlement, as the investors have no means of accurately valuing the assets they are to receive. The Receiver and the defendants have – and will – tout the large volume of information provided via the online data room, the third-party reports prepared on the businesses, and the enormous amount of work performed in connection with the proposed settlement. The objecting investors do not contest the existence of such information or the diligence conducted by the parties and their competent advisors. However, two and a half years have passed since the Receiver filed suit against the defendants and, despite the volumes of information provided and the diligence conducted to date by third party advisors, the investors are no closer to understanding the true value of the Settlement Entities today than they were two and a half years ago. Unfortunately, all of the financial information that has been made available to investors to date has been prepared by, or in reliance upon data provided by, the very persons accused of wrongdoing and is therefore inherently unreliable. Such information cannot serve as a substitute for the *reliable* financial information requested herein.

Moreover, providing this critical information at a later date (*i.e.*, after the deadline for objections has passed but before investors are required to submit releases evidencing their approval of the settlement), as promised by the Receiver, will not suffice. Fairness dictates that reliable financial information be delivered to investors *before* investors are required to submit their final objections to the settlement – not at some later take-it-or-

leave-it time in the process.  Further, while the Joint Motion indicates that "investor elections on whether to sign Investor Releases shall not be required from such investors until after they have received [audited financial statements]" (Joint Motion at 26), it is important to note that an investor's decision regarding whether to participate in the settlement does not end with the mere delivery of audits.  Instead, the delivery of audits starts a sequence of analysis and comparison to the settlement terms that then leads an investor to either object to or accept the proposed settlement.

Objectors are entitled to "meaningful participation" in the settlement proceedings. *Girsh v. Jepson*, 521 F.2d 153, 158 (3d Cir.1975).  *See also In re Domestic Air Transp. Antitrust Lit.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619-620 (S.D. Cal.2005) (same).  Indeed, courts have allowed formal discovery to objectors to facilitate such meaningful participation, which is more than the objecting investors herein are requesting.  *See, e.g., Girsh*, 521 F.2d at 157. There are sound reasons courts and the law require that interested parties be afforded an opportunity to make objections to a proposed settlement *before* the court considers approval of the settlement.  This process not only protects the interests of interested parties, but also better allows the court to discharge its obligation to assess the fairness of the settlement.  Part and parcel of the need to allow objections is the need to allow *informed* objections.  Requiring objections to be made before reliable information is made available, such as audited financial statements, completely undercuts the strong reasons for allowing such objections in the first place.

11

The Joint Motion leads investors to believe that the terms of the settlement assure a "beneficial outcome for the investors" (Joint Motion at 25) and that the interests of participating investors will be well secured and protected; however, that is simply not the case.  For instance, the Joint Motion states that, under the settlement, investors will receive "$275 million plus interest in cash on the Senior Term Facility (to the extent of proceeds ultimately available) before the Sun Principals receive anything in respect of the Retained Equity." (*Id.* at 13).  This statement is extremely misleading.  Pursuant to the Settlement Agreement, the following financial obligations of the Settlement Entities are either paid in advance of the $275 million of debt and preferred stock to be paid to the investors or are collateralized with priority over the $275 million by settlement assets cherry-picked by the defendants:

- The Baronoff Employment Agreement, Koslow Consulting Agreement, and Leder Consulting Agreement described in the Settlement Agreement (with $1.8 million paid under each consulting agreement, and a confidential amount under the employment agreement) (Settlement Agreement Sections 2.1(i)-(k)).

- Secured Notes of $5.884 million payable to the Principals, Spouses, and Dawson (Settlement Agreement Section 2.1(l)).

- The senior secured working capital line of credit required under the Settlement Agreement, the amount and terms of which are entirely unknown to the investors (Settlement Agreement Section 4.1(i)).

- Coverage of the Personal Guarantees of the Principals, to the extent outstanding, from the assets constituting the Performance Security (Settlement Agreement Section 2.1(o)(i)).

- Forgiveness of the Shareholder Loans from the Companies to the Principals and/or Spouses (described in the Joint Motion as approximately $1.7 million in aggregate) (Settlement Agreement Section 2.1(p)).

- Indemnification of, and insurance coverage for, the Principals, Spouses and Dawson (Settlement Agreement Article VI), the terms of which are grossly overbroad in favor of these individuals and limitless in amount.

- Reasonable out-of-pocket expenses paid by the defendants, the Receiver, and even the Founding Partners Investor Steering Committee in connection with the Settlement Agreement to numerous third parties including, without limitation: the law firm Broad and Cassel LLP, accounting firm Berkowitz, Dick Pollack & Brant ("Berkowitz"), Huron Consulting Group, Receiver's New York counsel, Proskauer LLP, Cain Brothers & Company, LLC, Patton Boggs LLP, Specialty Finance Partners LP ("Specialty Finance"), Nightingale Consulting LLC ("Nightingale"), Focus Management Group USA, Inc. ("FMG") and MTS Health Partners, L.P. ("MTS") (Settlement Agreement Section 9.1).

Based on the limited information provided to investors to date, it is highly conceivable that investors *could receive nothing at all*.

As a court in the Southern District of New York recently noted in the analogous context of judging the fairness of a consent decree in an SEC enforcement action, "the court, and the public, need some knowledge of what the underlying facts are, for otherwise, the court becomes a mere handmaiden to a settlement privately negotiated on the basis of unknown facts…." *U.S. S.E.C. v. Citigroup Global Markets Inc*., --- F. Supp. 2d ---, No. 11 Civ. 7387, 2011 WL 5903733, at *4 (S.D.N.Y. Nov. 28, 2011).

**B.     Investors Lack Audited Financial Statements and GAAP-Based Interim Financials.**

Against the background of financial misrepresentations and irregularities, investors are now asked to take the word of the Sun Principals regarding information the Sun Principals have provided as a basis for the value of the Settlement Entities.  As of the date of this filing, an independent, current financial audit of the Settlement Entities has not been completed, but instead all reports to date have been based on information

provided by the defendants herein, which the objecting investors believe is inherently unreliable.

Without completed audits for 2009 and 2010, supplemented by GAAP-based interim financials for 2011, investors lack a clear picture of the true financial condition of the Settlement Entities, as well as their future earnings capacity. Additionally, given the alleged prior misconduct of the Sun Principals, the need for these financial documents is even more crucial. Courts in various contexts have recognized the importance of *audited* financial statements and the unreliability of unaudited financial statements. *See Bata Shoe Co., Inc. v. United States*, 595 F. 2d 9, 17 (Ct. Cl. 1979) (noting that in determining a party's lost profits, a "figure is not highly reliable" when "it represents *unaudited* figures") (emphasis added); *Estate of Obering v. Comm'r of Internal Revenue, T.C. Memo 1985-23*, 1985 WL 14887 (U.S. Tax Ct. 1985) ("In valuing Warrior stock, we did not rely upon the *unaudited* financial statements submitted by the parties because we viewed them as an *unreliable indicator of value*") (emphasis added); *In re Mastro*, --- B.R. ---, No. 09-16841, 2011 WL 5552949 (Bankr. W.D. Wash. Nov. 15, 2011) ("However, his financial statements were not prepared in accordance with generally accepted accounting principles and were not *audited* or reviewed by independent accountants.... Consequently, Mastro's financial statements did not provide a *reliable assessment of his financial condition*") (emphasis added).

In an attempt to provide financial clarity regarding the Settlement Entities and a valuation thereof, the Receiver serves up reports from FMG and MTS. While these reports provide insight into the operations of the Settlement Entities, the findings are not

based on audited financial statements and are therefore inherently flawed and unreliable for the purpose of determining the true value of the Settlement Entities.

Indeed, FMG itself emphasizes that the FMG reports previously made available to select investors are *based on information provided by Sun Capital management,* and FMG *expressly refuses to make any representations or warranties* with respect to the material contained in the reports, its accuracy, or its completeness.

The same holds true for the MTS valuation estimate required as a condition to closing the settlement transaction (*see* Settlement Agreement Section 4.2(g)), which, as dictated by the proposed Settlement Agreement, will "not include any reliance opinions." Further, the objecting investors believe this valuation estimate (which will offer a range of valuations and not a full valuation opinion) will be based on management-prepared financial statements, as opposed to completed audits, rendering the report even less reliable.

Furthermore, the online data room referenced by the Receiver and defendants does not substitute for a full and complete audit.  Although the parties continually point to the data room as evidence of the alleged due diligence that has gone into preparing the proposed settlement, the data room suffers from the same fatal flaw as the FMG reports and MTS valuation estimate—*all of the data has been provided by the defendants accused of financial fraud and is unaudited.*

C.     **Investors Lack Information and Transparency on the Terms of the Working Capital Line of Credit.**

The lack of transparency regarding the amount and terms of the working capital line of credit, which is a condition to closing the proposed settlement transaction (*see*

Settlement Agreement Section 4.1(i)), is another barrier to the investors' ability to evaluate the financial condition of the Settlement Entities.  This is particularly troublesome because the working capital line of credit takes priority over all of the investors' secured notes with respect to the collateral pledged thereunder.  (*See* Section 2.7(a) of the Senior Loan and Security Agreement, Joint Motion Exhibit 3, Tab D.)  In fact, the collateral for the working capital line of credit is *all the present and future accounts receivable and related instruments* of Promise and certain of its subsidiaries.  As a result, *the entire operating income* of Promise could be swallowed up as payments on the working capital line of credit and, if the Settlement Entity cannot meet these obligations, the investors could be left with nothing but a bankrupt company or forced to raise additional capital.

> **D.  Investors Lack Information and Transparency Regarding Third-Party Advisory Fees.**

Investors lack any transparency with regard to the scope of third-party advisory fees paid by the defendants in connection with the proposed settlement, including, without limitation, advisory fees paid to or on behalf of the Sun Principals, the Receiver, and the Founding Partners Investor Steering Committee (referred to in the Joint Motion as the "Investor Group").  All such fees have been and will continue to be a financial burden on the Settlement Entities, which effectively reduces their value.  The objecting investors specifically object to the fees paid on behalf of the Founding Partners Investor Steering Committee to its advisors as these advisors represent the sole interests of their client, the Founding Partners Investor Steering Committee, and not the investor group as a whole.  At times, investors have even been expressly denied access to such resources.

16

These fees should therefore be the exclusive responsibility of the Founding Partners

Investor Steering Committee and not shared among all releasing investors.

### E.    Investors Lack Promised Confidential Information.

Pursuant to the Investor Confidentiality Agreement provided in connection with

the settlement documents, the following confidential information has been promised (but

not fully provided) by the Receiver and defendants:  "1) the Peter Baronoff Employment

Agreement; 2) the Redacted Disclosure Statement; 3) the Audited Financial Statements;

4) the FMG Update; 5) the MTS Valuation; and 6) the Organizational Chart."  Although

the Receiver has just now, in recent days, provided some information to certain investors

who have acquiesced to confidentiality agreements, as of the date of this filing, much of

this information has not been provided.  Timely receipt of all six items of confidential

information is imperative in order to allow investors to analyze such information against

the terms of the proposed settlement.  Not having much of the promised confidential

information – including the critical audited financial statements – by the objection

deadline greatly inhibits each investor's ability to determine whether an objection to the

proposed settlement is warranted and to more fully support that objection.  Such a delay

in providing critical information undercuts the important role of objections in this

process.

## II.    INVESTORS OBJECT TO OTHER ASPECTS OF THE PROPOSED SETTLEMENT THAT ARE EITHER UNREASONABLE OR UNCLEAR.

The absence of reliable financial information affects not only the potential value

of the Settlement Entities, but the reasonableness of other aspects of the proposed

settlement as well.

**A.    The Indemnification Obligations Are Overly Broad And Make Releasing Investors Ultimately Liable to Non-Releasing Investors For Defendants' Malfeasance.**

The investors herein object to the indemnification provisions set forth in Article VI of the proposed Settlement Agreement, which unduly favor the Sun Principals. Despite the far-reaching releases the Sun Principals will receive from participating investors and the Receiver under the settlement, the indemnification provisions extend protection to the Sun Principals for, among numerous other claims, pending lawsuits brought by non-releasing investors.  As such, defrauded investors who submit releases under the settlement will effectively be required to indemnify the Sun Principals for their fraudulent behavior – a result that is entirely senseless.  This paradox also has the extraordinary effect of pitting investors against each other, as any recovery obtained by non-releasing investors pursuant to existing litigation proceedings will ultimately be funded by releasing investors.  Given the past alleged misconduct of the Sun Principals, the Settlement Agreement's overly broad indemnification provisions leave FP Designee saddled with potentially limitless indemnification obligations that will materially impact the financial condition of the Settlement Entities.

**B.    The Limited Right of Setoff for Breaches of the Sun Principals' Personal Representations Undercuts the Value of the Settlement.**

The investors object to FP Designee's limited rights of setoff against future payments owed to the Sun Principals provided in Section 9.15 of the proposed Settlement Agreement.  While the setoff provision appears to provide an avenue of relief in the event a Sun Principal breaches any representation, warranty or covenant in the Transaction Documents, in reality, it is practically useless.  The fact that damages can only be set off

against amounts owed *after* "a final, non-appealable judgment" completely vitiates the

provision, as by the time such a judgment is secured, there is likely to be little or nothing

in the way of payments still owed to the Sun Principals and therefore little to set off

against. In addition, the provision would not cover breaches of representations,

warranties or covenants of the Sun Entities, which representations, warranties and

covenants are substantially (and opportunely) more extensive than those of the Sun

Principals.

> **C.      The Lack of a Tax Opinion Regarding the Effect of the Settlement on the Settlement Entities and the Founding Partners Funds Hinders the Investors' Analysis of the Settlement.**

The absence of a tax opinion regarding the tax impact of the proposed settlement

on the Settlement Entities and the Founding Partners funds (and, therefore, the investors)

represents yet another impediment to the investors' ability to make a rational and

informed business decision regarding the settlement. It is reasonable to require such an

opinion before entering into a transaction of this magnitude and one would expect the

Receiver's accounting firm, Berkowitz, to provide it.

> **D.      The Manner in Which Investors will be Allocated Interests in FP Designee is Vague.**

The proposed settlement is unclear in terms of what an investor's share in the

newly created FP Designee will be. In the Joint Motion, the Receiver states that he

expects "an investor's particular ownership interest be determined broadly based on the

proportion of that investor's total unreturned principal invested in the Receivership

Entities compared against the total unreturned principal investments made by all

investors. The exact formula for this calculation will be submitted by the Receiver for

the Court's consideration in connection with a motion to approve this claims process."
(Joint Motion at 19, n. 5). "Unreturned principal investments" is not defined and could
be interpreted in a number of ways.  While the Receiver states that he will provide this
formula in connection with his motion to approve the claims process, the investors need
this information *now* in order to make a rational and informed business decision
regarding whether to object to the settlement.

     **E.**     **The Magnitude of Related Party Transactions is Unacceptable.**

The objecting investors specifically object to the magnitude of related party
transactions orchestrated by the Sun Principals since the date of the Security Agreements,
which have, over time, greatly impacted the Sun Entities and would be effectively ratified
by the Settlement Agreement.

<u>**REQUESTED RELIEF**</u>

For the reasons set forth above, the investors respectfully request the following
relief from this Court:

(1) refuse approval of the settlement unless and until the following actions have
been taken and extend the deadline for objecting to the proposed settlement
until 15 days after the financial information requested in paragraph (3) and the
valuation opinion requested in paragraph (4) below have been provided to all
investors;

(2) require defendants to produce information to the Promise and Success auditors
(Marcum Rachlin) that is necessary to complete the audits of such entities in
sufficient time to allow for audited financial statements for Promise and

Success to be completed and delivered to investors within 60 days of the date of the Court's order;

(3) require the Receiver to provide the following financial information to the investors within 60 days of the date of the Court's order:

    (a) the audited and interim financial statements described in detail in footnote six to these Objections;

    (b) complete and unredacted disclosure schedules to the Settlement Agreement;

    (c) the amount and terms of the working capital line of credit required under the Settlement Agreement as a condition to closing the settlement transaction;

    (d) full and complete disclosure of all third-party advisory fees paid by the defendants in connection with the proposed settlement, including, without limitation, advisory fees paid to or on behalf of the Sun Principals, the Receiver, and the Founding Partners Investor Steering Committee, and all such third-party advisory fees that are expected to be paid through or on the closing date of the settlement;

    (e) a tax opinion regarding the impact of the proposed settlement on the Settlement Entities and the Founding Partners funds; and

    (f) clarity regarding the basis on which each investor's ownership interest in FP Designee will be determined.

21

(4) require that an independent valuation opinion regarding the value of the Settlement Entities, based on audited financial statements and GAAP-based interim financials and prepared by a valuation firm agreed to by the Receiver and the objecting investors, be delivered to investors within 30 days after delivery of the audited financial statements;

(5) require the Founding Partners Investor Steering Committee to reimburse defendants for all amounts paid by defendants to Patton Boggs LLP, Specialty Finance, Nightingale, MTS, FMG, and other third-party advisors for work performed on behalf of the Founding Partners Investor Steering Committee;

(6) require the Sun Principals to remit to the defendants all amounts paid under related party transactions since the date of the Security Agreements;

(7) require the parties to provide justification for the benefits and payments to Sun Principals (and priority provided thereto) under the terms of the proposed settlement, or to remove such provisions from the settlement; and

(8) allow the objecting investors herein to file confidential supplemental materials in support of these Objections under seal.

Dated:  January 31, 2012                     Respectfully submitted,

                                             **BOIES, SCHILLER & FLEXNER LLP**

                                             By:_____/s/ Stuart H. Singer_____
                                                 Stuart H. Singer, Esq.
                                                 Florida Bar No. 0377325
                                                 401 East Las Olas Boulevard, Suite 1200
                                                 Fort Lauderdale, Florida  33301
                                                 Telephone: (954) 356-0011
                                                 Facsimile:  (954) 356-0022

                                                 *Attorneys for Herein Objecting Investors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 31, 2012, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is

being served this day on all counsel of record identified on the attached Service List.

/s/ Stuart H. Singer

## SERVICE LIST

Jonathan Etra, Esq.
jetra@broadandcassel.com
David J. Powers, Esq.
dpowers@broadandcassel.com
BROAD AND CASSEL
One Biscayne Tower
2 South Biscayne Blvd., 21st Fl.
Miami, Florida 33131

*Attorneys for the Receiver*

Sarah S. Gold, Esq.
sgold@proskauer.com
Karen E. Clarke, Esq.
kclark@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299

*Attorneys for the Defendants*