UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION

Case No. 2:09-cv-445-FtM-29SPC

---

DANIEL S. NEWMAN, as Receiver for Founding Partners
Capital Management Company: Founding Partners Stable-
Value Fund, L.P.; Founding Partners Stable-Value Fund II,
L.P.; Founding Partners Global Fund, Ltd.; and Founding
Partners Hybrid-Value Fund, L.P.,

Plaintiff,

vs.

SUN CAPITAL, INC., a Florida corporation, SUN
CAPITAL HEALTHCARE, INC., a Florida corporation,
and HLP PROPERTIES OF PORT ARTHUR, LLC, a
Texas limited liability company,

Defendants.

---

## OBJECTION OF INVESTORS TJNJH AND KATHLEEN A. OLBERTS
## TO PROPOSED SETTLEMENT TRANSACTION

**NOW INTO COURT,** through their undersigned counsel and pursuant to this Court's

December 27, 2011, Order, comes TJNJH INVESTMENT PARTNERSHIP ("TJNJH") and

KATHLEEN ANN OLBERTS ("Olberts"), who respectfully submit this objection to the Joint

Motion For Expedited Approval of Proposed Procedure to Obtain Court Approval of the

Proposed Settlement (the "Motion") filed by plaintiff DANIEL S. NEWMAN, as Receiver for

the "Founding Partners funds[1]" and defendants SUN CAPITAL INC., CAPITAL

---

[1] "Founding Partners funds" refers to Founding Partners Global Fund, Ltd. ("Global Fund"), Founding
Partners Stable-Value Fund, L.P. ("Stable-Value"), Founding Partners Stable-Value Fund II, L.P.
("Stable-Value II") and Founding Partners Hybrid-Value Fund, L.P. ("Hybrid-Value"). All capitalized
terms not defined herein have the defined meaning noted in either the Parties' Joint Motion for Expedited
Approval of Proposed Procedure to Obtain Court Approval of the Proposed Settlement Transaction
("Joint Motion") (D.E. # 248) or the Settlement Agreement.

HEALTHCARE, INC., AND HLP PROPERTIES OF PORT ARTHUR, LLC (defendants are collectively referred to as the "Sun entities").

As reflected by the statements contained in Composite Exhibit 1 attached to this objection, TJNJH and Olberts are investors in both the Stable-Value and Hybrid-Value funds.[2] The last monthly statements for the SVF and HVF issued to TJNJH and Olberts are contained in Composite Exhibit 1. The statements for the SVF show a net capital balance, as of January 1, 2009, of $9,201,029.61 for TJNJH and $1,344,523.44 for Olberts.[3] The last monthly statements for the HVF issued to TJNJH and Olberts show a net capital balance, as of November 1, 2008, of $3,583,407.58 for TJNJH and $270,294.76 for Olberts.

### PRELIMINARY STATEMENT

Objectors TJNJH and Olberts also have joined in the objection filed on behalf of a number of investors by the firm of Boies, Schiller & Flexner, LLP ("BSF"). TJNJH and Olberts file this additional objection to raise matters that are not necessarily shared in common with the BSF objectors who are not investors, as are TJNJH and Olberts, in both the Stable-Value and Hybrid-Value funds.

Specifically, TJNJH objects to the Receiver's apparent inclusion of the Hybrid-Value fund in its entirety, rather than to the limited extent reflected by the Hybrid-Value fund's actual investments made in the Stable-Value funds. The Motion proposes that all assets of the Hybrid-Value fund be included in the proposed settlement with defendants and allocation of settlement

---

[2] Pursuant to the Court's Order dated December 27, 2011, requiring objectors to show proof of their status as investors, THNJH and Olberts have attached as Composite Ex. 1 documentation of their status as investors and limited partners in one or more Founding Partners funds.

[3] Olberts maintained two accounts in the Stable-Value Fund, L.P. -- one as custodian for her IRA Rollover and the other for the Kathleen A. Olberts Living Trust. References to Olberts investment in the Stable-Value Fund, L.P. as of January 1, 2009 includes the combined net capital balance of both accounts. The IRA Rollover also invested in the HVF.

proceeds among all investors, regardless of the nature of the funds in which they invested and the extent of any connection to the Sun Entities. While that might make sense, if the Receiver had represented to the Court that the Founding Partners funds were a Ponzi scheme or if the funds were fungible, he has not made such a suggestion and the funds were not fungible. Moreover, as the Motion states and the Receiver's complaint reflects, the Receiver has asserted "claims arising from the loan agreements between Stable-Value and the Sun Entities." (Motion at 6). There is no loan agreement, or any other agreement for that matter, between the Hybrid-Value fund and any of the Sun Entities.

Objectors respectfully submit that the Receiver's apparent intent to pool unrelated funds, i.e. the Hybrid-Value fund with the Stable-Value funds, followed by the pro-rata distribution of the assets recovered from all three funds to investors regardless of their actual participation in the Hybrid-Value fund, would be unfair and unreasonable. As noted in *S.E.C. v. Wealth Management LLC*, 628 F.3d 323, 332 (7th Cir. 2010).

> "In supervising an equitable receivership in a securities fraud enforcement action, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." "The goal in both securities-fraud receiverships and liquidation bankruptcy is identical, the fair distribution of the liquidated assets." *Id.* at 334.
> "The court has the authority to approve any plan provided it is 'fair and reasonable.'" SEC v. Byers, 637 F.Supp2d 166, 174 (S.D.N.Y. 2009). "The standard is whether a distribution is equitable and fair in the eyes of a reasonable judge." *Id.*

The Second Circuit has established two factors that must be satisfied to approve a pro-rata distribution. "First, investors' funds must have been commingled. Second, the victims must be similarly situated 'with respect to their relationship to the defrauders.'" *Id.* at 177. Here, as this objection demonstrates, the Hybrid-Value funds were not commingled with the Stable-Value funds. Hybrid-Value funds were invested, as the Receiver acknowledged in his Third Report, in

11 different private equity firms.  The relationship between the Hybrid-Value funds and the "defrauders," i.e., the Sun Entities is dramatically different.  The Stable-Value funds had 200 investors who intended to invest in "high grade" medical receivables.  Stable-Value funds entered into a contractual relationship with Sun Entities. Hybrid-Value had only 12-15 investors, who intended to invest and did invest in private equity and startup companies. Hybrid-Value had no contractual relationship with a Sun Entity. The entire amount of money invested in the Stable-Value funds, $500 to $600 million, was invested/loaned to/used by Sun Entities. The entire amount of money invested by the Hybrid-Value fund was invested in the 11 private equity firms described by the Receiver in his Third Report.

For the reasons stated in this objection, these objectors trust that the proposed settlement with defendants will not be deemed to fair and reasonable to Hybrid-Value fund investors in the eyes of this Court.  Any plan of distribution applicable to investors in the Hybrid-Value fund must be entirely separate from the proposed plan reflected in the Motion and Settlement documents for investors in the Stable Value funds -- with the only exception being that the Hybrid-Value fund should be treated as a single investor in the Stable-Value funds.  In that capacity, the Hybrid-Value fund would share in any finally approved settlement with the defendants based on its pro rata share of the  investment in the Stable-Value funds and then, in turn, allocate that recovery, pro rata, to Hybrid-Value fund investors.  A separate plan relative to the how the Hybrid-Value fund should be managed going forward must be developed with the full participation of the 12 to 15 Hybrid-Value fund investors, after the Receiver has provided full disclosure of all material information regarding the 11 private equity investments that comprise the Hybrid-Value fund portfolio.

4

**A. The Receiver Has Failed to Disclose Material Facts that Distinguish the Hybrid-Value Fund from the other "Receivership Funds."**

The Motion fails to remind the Court of the specific nature and composition of the assets comprising the Hybrid-Value fund and, instead, suggests that the Hybrid-Value fund is fungible with the Stable-Value funds. It is not. The Stable-Value funds were created, as the Receiver conceded in his complaint, for the purpose of investing/loaning money to Sun Entities for investment in "high grade" medical receivables. The Hybrid-Value fund was created with an entirely different investment purpose and intent.

As the Receiver noted in his First Report of November 16, 2009, the book value of the Hybrid-Value fund pales in comparison to the Stable-Value funds. They book value of the Hybrid-Value fund was $13.3 million as of February 28, 2009, representing a tiny fraction of the $500 to $600 million invested by the Stable-Value funds with Sun Entities. In the same Report the Receiver also observed that "many of these [Hybrid-Value] investments were made in other hedge funds or small startup enterprises." (First Report at 8).

On May 10, 2010, two representatives of these objectors met with the Receiver and one of his partners at the Receiver's office in Miami. In the course of their discussion, the Receiver informed the representatives that there are only 12 to 15 investors in the Hybrid-Value funds. On May 21, 2010, the Receiver's partner informed the representatives that there are over 200 investors in the Stable-Value funds. (See Exhibit 2 attached to this Objection, an email exchange between the objectors' representatives and the Receiver's partner.)

In his Second Report, dated January 7, 2011, the Receiver did not provide any information pertaining to the Hybrid-Value fund beyond disclosure of his retention of Catalyst Financial, LLC "to serve as his financial advisor with respect to individual holdings within two specified portfolios, Hybrid Value Fund, LLP and Stable Value Fund, LLP the ('Portofolios').

5

(Second Report at 22-23.)  It was not until the release of his Third Report on June 16, 2011 that the Receiver first disclosed the composition of the Hybrid-Value fund. The Third Report stated that Catalyst had conducted a preliminary analysis of the Hybrid Value portfolio and then identified and described, generally, the nature of each investment in the portfolio and the percentage of the Hybrid-Value fund's ownership of the investment. (Third Report at 3-8.)

At Section II of the Third Report, under the heading "Founding Partners Hybrid Value Fund Update," the Receiver identified 11 separate investments that comprised the "Hybrid Value portfolio." The 11 investments are: Advance Diamond Technologies (commercialized diamond technology), Cronus Real Estate Fund, LP (real estate investment in 46 properties with capitalization of $460 million), Dodge Oil and Gas LP/Devonian Partners (ownership and management of oil and gas properties in West Texas), Equastone Value Fund II, LLC ("EVF II")(private equity real estate investments in 46 commercial properties), Franklin Street Properties (a private real estate investment firm), National Advisors Holdings, Inc. (holding company for a company providing custodial and administrative services for registered investment advisors), OurStage, Inc. (a development and management of website for musicians), Realty Capital Partners LLP (a manager of 13 investment projects consisting of residential and commercial developments located in six states), SSR Capital Partners, LP (a hedge fund comprised of two U.S. funds and one international fund), Trade PMR Inc. (a privately held brokerage firm to services Registered Investment Advisors and their clients), and VIRxSYS Corp.(a privately held biotechnology company focusing on RNA-based therapies such as vaccines) (Third Report at 3-6.).  Significantly, Catalyst does not identify the Stable-Value funds or any Sun Entity as one of the investments contained in the Hybrid-Value portfolio.

Objectors understand, however, that while some investment may have been made in the Stable-Value funds by a hedge fund contained in the Hybrid-Value portfolio, approximately 80% to 90% of the assets underlying the Hybrid-Value fund have no connection of any kind to the Stable-Value funds. Attached as Exhibit 3, is a copy of the Hybrid-Value fund "Private Equity Industry Allocation" that Founding Partners Capital Management Company, L.P. ("FPCMC") provided to current and prospective Hybrid-Value fund investors. As the exhibit indicates, only 15.7% of the $10.2 million then invested in the Hybrid-Value fund was invested in the "Healthcare" sector. A second allocation document provided by FPCMC to Hybrid-Value investors and potential investors is attached as Exhibit 4 and shows that 78.3% of the $13.4 million then invested in the fund was in private equity (76.4%) and cash (1.9%) with the balance invested in "Structured Finance," defined as "a fund that invests primarily in health care receivables (sister partnership); and a fund that invests in PIPE transactions."[4]

Thus, only a small portion of the funds invested by the dozen or so Hybrid-Value fund investors in the private equity portfolio found its way into loans made to Sun Entities and, significantly, no cognizable action has been brought or even asserted by the Receiver in connection with defrauding Hybrid-Value fund investors. Rather, the Receiver's entire focus and that of this litigation has been premised on the relationship between Founding Partners' Stable-Value funds and the Sun Entities. Those claims are not based on any relationship between the Hybrid-Value fund and the Sun Entities. That is because there is no such relationship.

Because the Hybrid-Value fund is a separate and distinct fund from the Stable-Value funds, is comprised of a very small group of investors whose funds were intended to be invested and

---

[4] "PIPE" stands for "private investment in public equity." In a PIPE offering, investors commit to purchase a certain number of restricted shares from a company at a specified price. The company agrees, in turn, to file a resale registration statement so that the investors can resell the shares to the public.

were invested in private equity investment vehicles, not the Stable-Value fund, it is unfair and unreasonable for the Receiver to include the Hybrid-Value fund in its entirety as part of the "Receivership Funds" for purposes of the proposed settlement with the Sun Entities.

**B. The Receiver Should Treat the Hybrid-Value Fund as a Single Investor in the Stable-Value Funds for Settlement Purposes.**

In the Motion, the Receiver refers to all of the Founding Partners funds collectively, as the "Receivership Funds," and to all investors as participants in a singular "Fund."  While these objectors readily acknowledge that all of the funds are subject to the receivership, they object to the notion that all of the funds share the same primary characteristics and relationship to the Sun Entities.  As demonstrated above, they do not.

Objectors also object to the Receiver's Motion to the extent that it invites the Court to find that investments of the Fund Investors, in their entirety, were invested with/loaned to what the Receiver refers to as the "Sun-Related Parties."  Clearly, as confirmed by the Receiver's Third Report, they were not.  The simple truth is that not all of the funds share the same investment characteristics and not all funds were invested in a Sun Entity.

The Stable-Value funds were invested with/loaned to Sun Related Parties, *in their entirety*. Investors were led to believe that their investments in the Stable-Value and Stable-Value II funds were being invested with/loaned to Sun for investment in the "high grade" medical receivables. The Hybrid-Value fund, on the other hand, involved a completely different risk assessment.  The investments were made in private equity entities with a higher level of risk and a longer investment return horizon than the investment in a fund secured by "high grade" medical receivables with a contractually required high collateralization ratio.

These objectors submit that it would be unreasonable and unfair, as the Motion suggests, for the Receiver to be allowed to lump the Hybrid-Value fund, *in its entirety*, with the assets of all

8

other "Receivership Funds." The Court should recognize the clear distinction between the Hybrid-Value fund and the Stable-Value funds by rejecting the Receiver's attempt to lump the Hybrid-Value fund with the Stable-Value funds for purposes of the proposed settlement. The interest of the Hybrid-Value fund in the settlement is no different than that of a single investor who would participate only to the extent of his pro rata investment in the Stable-Value funds, if any. On the other hand, if the investment in Stable-Value funds was made by one or more of the private equity companies in which Hybrid-Value invested, not directly by the Hybrid-Value fund, then the interest of the Hybrid-Value would be derivative, i.e., as an investor in that company. The Receiver should simply allocate the appropriate "share" from a settlement with the Sun-Related Parties to the Hybrid-Value fund for any direct investment or to one of the private equity companies in its portfolio that may have invested in the Stable-Value fund. Thereafter, allocation may be made to the Hybrid-Value fund's investors based on their respective ownership interests in the Hybrid-Value fund.

Given the separate and distinct nature of the Hybrid-Value fund and the limited number of its investors, the Court should direct the Receiver to contact all Hybrid-Value fund investors to discuss the possibility of turning over direct responsibility for the management and control of the fund to its investors. There is no reasonable basis for continuing to hold the Hybrid-Value fund and its investors "hostage" to this litigation and the long, drawn out process that is encompassed by the proposed settlement with the Sun-Related Parties. The 12 to 15 investors are undoubtedly capable of assuming responsibility for the management and control of the assets underlying the Hybrid-Value fund. It is their money that was used to acquire the assets. The assets are separate and distinct from the Stable-Value funds. The Hybrid-Value fund investors have been deprived of the right to receive any benefit from those assets for three years. Objectors ask the Court to

direct the Receiver to work directly with Hybrid-Value investors to come up with a plan to turn over the power to manage and control their interest in the Hybrid-Value fund's assets with all deliberate speed.

## CONCLUSION

The Hybrid-Value fund is not fungible with the other funds that are the subject of this litigation. It would not be fair or reasonable to lump the Hybrid-Value fund with the Stable-Value funds as part of the proposed settlement or any settlement. The approach suggested by these objectors, to treat the Hybrid-Value fund as a single investor for purposes of any settlement with defendants, if it made a direct investment in the Stable-Value funds, is fair and reasonable. It is also simple to accomplish. The Receiver knows or should know how much money the Hybrid-Value fund actually invested in the Sun-Related Parties directly, if any, and/or which private equity company(ies) invested in the Stable-Value funds and how much was invested. The Receiver also knows or should know what each Hybrid-Value fund investor's account balance interest is in the Hybrid Value fund. Based on that information, if direct investment was made, the Receiver can readily determine the appropriate allocation to be made to an individual Hybrid-Value fund investor. If no direct investment in the Stable-Value funds was made by the Hybrid-Value fund, but only by a private equity company in its portfolio, then the Receiver may simply allocate the proper share from a settlement to the private equity company.

These objectors further ask the Court to direct the Receiver to contact all Hybrid-Value investors within the next 30 days to begin the process of turning over to them responsibility for management and control of Hybrid-Value assets. Objectors respectfully submit that it is the Hybrid-Value investors, not the Receiver, who are in the best position to determine what they

10

wish to do with the assets in the Hybrid-Value fund's portfolio.   Therefore, for the foregoing

reasons, Objectors respectfully submit this Objection to Proposed Settlement Transaction.

Dated:  January 31, 2012

Respectfully submitted,

FRIEDMAN MAGUIRE & CAREY, P.C.

By: *Michelle L. Carey*

Michelle L. Carey
150 S. Wacker Drive
Suite 2600
Chicago, IL 60606
Telephone: (312) 857-4000
Facsimile: (312) 857-1880
IL ARDC No. 6301529
FL Bar No. 0089514

*Attorneys for Objectors Herein*