## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA – FORT MYERS DIVISION

Case No. 2:09-cv-445-FtM-29SPC

─────────────────────────────────────────────

DANIEL S. NEWMAN, as Receiver for Founding Partners
Capital Management Company; Founding Partners Stable-
Value Fund, L.P.; Founding Partners Stable-Value Fund II,
L.P.; Founding Partners Global Fund, Ltd.; and Founding
Partners Hybrid-Value Fund, L.P.,

                                    Plaintiff,

          vs.

SUN CAPITAL, INC., a Florida corporation, SUN
CAPITAL HEALTHCARE, INC., a Florida corporation,
and HLP PROPERTIES OF PORT ARTHUR, LLC, a
Texas limited liability company,

                                    Defendants.

─────────────────────────────────────────────

## JOINT MOTION FOR APPROVAL OF REVISED SETTLEMENT AGREEMENT AND AMENDMENT OF MAY 17 OPINION AND ORDER

Plaintiff Daniel S. Newman, not individually but solely in his capacity as Receiver (the

"Receiver") for Founding Partners Capital Management Company ("FPCM"), Founding Partners

Stable-Value Fund, L.P. ("Stable-Value"), Founding Partners Stable-Value Fund II, L.P.

("Stable-Value II"), Founding Partners Global Fund, Ltd. ("Global Fund"), and Founding

Partners Hybrid-Value Fund, L.P. ("Hybrid-Value") (all five collectively the "Receivership

Entities" and the latter four collectively the "Receivership Funds"), and Defendants Sun Capital

Healthcare, Inc., Sun Capital, Inc., and HLP Properties of Port Arthur, LLC ("Defendants")

respectfully submit this Joint Motion, pursuant to Fed. R. Civ. P. 60(a) and the Court's direction

on May 17, 2012, for an Order (1) approving the parties' proposed settlement transaction, as now

revised pursuant to the Court's direction, and (2) correcting one sentence of the Court's Opinion

1

and Order dated May 17, 2012 [D.E. 304] with respect to the terms of the Settlement Agreement. In support thereof, the parties state as follows:

## Background

On December 9, 2011, the parties filed a Joint Motion for Expedited Approval of the Proposed Procedure to Obtain Court Approval of a Proposed Settlement Transaction (the "Joint Motion"). [D.E. 248-249]. In essence, the proposed settlement transaction provided for in the Settlement Agreement provides that, in exchange for releasing the Sun-Related Parties from the Receiver's claims and potential claims (and from the claims of any participating Stable-Value investors), the Sun Principals will transfer virtually all their ownership interests in their factoring companies, hospital companies and associated real estate holding companies to a newly-formed, wholly-owned subsidiary of Stable-Value, the "FP Designee."[1]

This Court on December 27, 2011 issued an Order preliminarily approving the settlement transaction and providing for a proceeding in which direct and indirect investors in Stable-Value could submit objections to the proposed settlement transaction. [D.E. 255]. Three sets of objections and responses were submitted, and the Court held a fairness hearing on March 30, 2012. Thereafter, by order dated May 7, 2012 [D.E. 299], the Court requested additional briefing from the parties concerning the merits of the Hybrid-Value Objectors' objections, which focused on the post-closing asset distribution plan contemplated by the Receiver. Those additional submissions were made on May 14, 2012. [D.E. 302, 303].

The Court thereafter issued its Opinion and Order addressing the fairness of the proposed settlement on May 17, 2012. [D.E. 304]. In that Opinion, the Court rejected all the objections raised by the three sets of objecting investors, with the exception of one issue raised by the

---

[1] Capitalized terms are the same as used in the December 9, 2011 Joint Motion.

2

Archdiocese of New Orleans.  The Archdiocese, citing a pending criminal investigation by the

Louisiana Attorney General, had objected to certain language in the form of Investor Release

appended to the Settlement Agreement that could be read to prevent a releasing investor from

cooperating with law enforcement officials, especially given that the list of proceedings

appended to the Release included a reference to the Louisiana Attorney General's investigation.[2]

The Court expressed concern about this possible effect of the Release's non-cooperation

language, especially when coupled with the confidentiality provision of the Settlement

Agreement (§ 7.7).  The Court made clear that it "will not approve a settlement agreement which

precludes a person or entity from doing what is commonly recognized as a public duty –

cooperating with law enforcement regarding the apprehension and prosecution of those who

violate criminal laws."  *Id.* at 32-33.

Though declining to approve the Settlement Agreement for this reason, the Court

afforded the parties an opportunity to revise it, with certain guidelines:  First, as to the Release's

Exhibit A list of existing proceedings in which claims to be released had been asserted, the Court

said, "[t]his exhibit should not include any criminal matter whatsoever."  *Id.* at 34.  "Further, the

broad confidentiality provision (Doc. # 249, § 7.7) should be revised to make clear that it is not

applicable to cooperation with law enforcement officials."  *Id.*  Third, "[a]ny other provision

which may be fairly interpreted as restricting the ability of parties to the Settlement Agreement

to cooperate with law enforcement officials will <u>not</u> be approved by this Court."  *Id.* at 34-35.

The Court directed that "the parties shall have thirty (30) days to revise this provision of the

---

[2]  It was not the parties' intent to prohibit cooperation with any criminal investigations or
prosecutions.  The Release provision was intended only as a standard term, often found in class
action or other multi-party contexts, to prevent a releasing investor from assisting other non-
releasing investors in asserting civil claims.

Settlement Agreement and the investors shall have thirty (30) days thereafter to submit their objections *limited to this modification*."  *Id.* at 35.

<u>**The Revised Provisions**</u>

In accordance with the Court's ruling, the parties have made several revisions to the form of Release and the confidentiality provision of the Settlement Agreement.[3]  Both clean and red-lined copies of the revised Settlement Agreement and form of Release are attached hereto as Exhibits 1 and 2, respectively.  First, as shown in Exhibit 1 (at p. 22), a new sentence has been added to § 7.7, the confidentiality provision, stating, "The foregoing provision shall not be applied to prevent any Party from cooperating with any criminal law enforcement authorities." Second, as shown in Exhibit 2, the word "civil" has been inserted in the Release's provision restricting assistance with other lawsuits, and a new clarifying sentence has been added at the end of that provision, stating, "For the avoidance of doubt, the foregoing is not intended to and shall not prevent any Releasor from cooperating with any criminal law enforcement authorities." Further, the reference to the Louisiana Attorney General investigation has been removed from the Release's Exhibit A list of proceedings.

The parties believe these changes address the Court's concern, and accordingly submit the revised Settlement Agreement and form of Release for this Court's consideration and approval.  The parties note additionally that the Receiver has taken the time to present the revised language to counsel for all three sets of objecting investors to ensure that it will meet with no further opposition.  Counsel for each of the objecting investors has confirmed to the

---

[3]  In addition to revising the confidentiality provision of the Settlement Agreement and the form of the Release in accordance with the Court's Opinion and Order, the Parties also made one minor, non-substantive change to the first sentence of the form of Release.  *See* Exhibit 2 (removing reference to the Court's Order dated December 27, 2011, preliminarily approving the Settlement Agreement).

Receiver that they have no objection to the manner in which the parties have resolved the issues identified by the Court concerning the Release and the confidentiality provision of the Settlement Agreement.[4]  Accordingly, the parties jointly request that the Court amend its May 17 Opinion and Order so as to approve the Settlement Agreement as revised and authorize the Receiver and the other parties to proceed to effectuate the settlement transaction in accordance therewith.

## The Requested Amendment of the Opinion

The parties also wish to bring to the Court's attention a statement in its May 17 Opinion and Order that the parties believe should be corrected.  The Hybrid-Value Objectors (who were two Hybrid-Value investors that were also direct Stable-Value investors) had objected that "the Receiver's apparent intent to pool unrelated funds, i.e., the Hybrid-Value fund with the Stable-Value funds, followed by the pro-rata distribution of the assets recovered from all three funds to investors regardless of their actual participation in the Hybrid-Value fund, would be unfair and unreasonable."  Doc. 275-5 at 3.

In the May 17 Opinion, the Court addressed the Hybrid-Value Objectors' objection, and concluded with the following paragraph:

> "The Hybrid-Value Objectors object to the manner in which the Receiver will distribute assets, namely a pro rata distribution, despite the fact that the Receiver has yet to establish a distribution plan.  Thus, the objection, as it relates to pro rata distribution, is speculation and premature.  Accordingly, the Court overrules this objection at this time.  <u>As to using the entirety of the assets contained in the Hybrid-Value fund as funds for settlement, this is simply a settlement term that investors in Hybrid-Value must consider</u> when deciding whether or not to approve the settlement, and does not render the Settlement Agreement unfair or unreasonable."

---

[4] The objecting investors have indicated their continuing objections to other aspects of the settlement, but those are beyond the scope permitted by the Court.  Copies of the Receiver's correspondence with the objecting investors' counsel are attached as Composite Exhibit 3.

D.E. 304 at p. 40.

Respectfully, as to the underscored passage, the parties wish to clarify that it is <u>not</u> a term of the Settlement Agreement that the Hybrid-Value fund's assets will be used as funds for settlement.  The settlement transaction on the table contains no provision concerning the Receiver's handling of the assets in the Hybrid-Value portfolio or any of the other Receivership Entities.  It addresses only the assets of the Sun-Related Parties to be conveyed to FP Designee in this settlement.  As the Court noted, the Hybrid-Value Objectors' objection is premature because it concerns the Receiver's allocation of interests, as to which he has not yet determined how he will handle the Hybrid-Value fund's interest in Stable-Value; but it does not affect the fairness of the proposed settlement transaction because it is not in fact a term of the settlement.  The parties respectfully request, therefore, that the Court omit the language from its opinion suggesting that the Receiver's ultimate determination as to the treatment of the Hybrid-Value fund's assets constitutes a "settlement term."

<b><u>The Amended Motion for Approval of Claims Process</u></b>

In the event the Court approves the Settlement Agreement as revised herein, the Parties respectfully request that the Court next consider the Receiver's Amended Motion for Approval of the Claims Process (the "Amended Motion").  [D.E. 338 in the case styled *SEC v. Founding Partners Capital Management Co., et al.*, case no. 2:09-CV-229-FTM-29SPC].  Once approved, the proposed claims process will ensure that the Proof of Claim Form and Release will be sent to investors, who will then have 45 days after the date of the order to respond and decide whether to release their claims and join in the Settlement Agreement.  *Id.* at pp. 5-6.  In place of the form of Release attached to the Amended Motion, the Receiver will use the form of Release that is ultimately approved by the Court.  In addition, since the Settlement Agreement is different from

6

the version previously provided to all investors, as part of the claims process, the Receiver will provide the final approved version of the Settlement Agreement to all investors.

## Conclusion

For the foregoing reasons, the Receiver and the Defendants jointly request that the Court issue an Order (a) amending the May 17 Opinion and Order (1) to provide that the Settlement Agreement is approved as revised and the Receiver is authorized to proceed to effectuate the settlement transaction in accordance therewith, and (2) to omit the suggestion that any particular treatment of Hybrid-Value assets is a settlement term and instead clarify that the Receiver's handling of the Hybrid-Value assets will be determined in a separate proceeding at a later time; and (b) providing that the Court retains jurisdiction over all matters relating to the enforcement of the Settlement Agreement and other Transaction Documents.

Dated:  June 11, 2012                                  Respectfully submitted,

By:  /s/  Jonathan Etra
    Jonathan Etra
      jetra@broadandcassel.com
      Florida Bar No. 0686905
    BROAD AND CASSEL
      2 South Biscayne Blvd., 21st Floor
      Miami, FL  33131
      Tel.:  305.373.9447
      Fax:  305.995.6403
      *Attorneys for Plaintiff*

By:  /s/  Jonathan Galler
    Sarah S. Gold, Esq. (*pro hac vice*)
      Florida Bar No. 0032190
      sgold@proskauer.com
    Karen E. Clarke, Esq. (*pro hac vice*)
      kclarke@proskauer.com
    PROSKAUER ROSE LLP
      Eleven Times Square
      New York, NY 10036-8299
      Tel: (212) 969-3000

Fax: (212) 969-2900
- and -
Jonathan Galler, Esq.
   Florida Bar No. 0037489
   jgaller@proskauer.com
PROSKAUER ROSE LLP
   One Boca Place, Suite 421 Atrium
   2255 Glades Road
   Boca Raton, FL 33431
   Tel: (561) 241-7400
   Fax: (561) 241-7145
*Attorneys for Defendants*