UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – FORT MYERS DIVISION

Case No. 2:09-cv-445-FtM-29SPC

DANIEL S. NEWMAN, as Receiver for Founding Partners
Capital Management Company; Founding Partners
Stable-Value Fund, L.P.; Founding Partners Stable-Value
Fund II, L.P.; Founding Partners Global Fund, Ltd.; and
Founding Partners Hybrid-Value Fund, L.P.,

                            Plaintiff,

vs.

SUN CAPITAL, INC., a Florida corporation, SUN
CAPITAL HEALTHCARE, INC., a Florida corporation,
and HLP PROPERTIES OF PORT ARTHUR, LLC, a
Texas limited liability company,

                            Defendants.

### APPLICATION FOR PAYMENT OF FEES AND EXPENSES INCURRED BY THE RECEIVER, RETAINED COUNSEL, AND OTHER PROFESSIONALS IN THE ABOVE-STYLED PROCEEDING

Receiver Daniel S. Newman, not individually, but solely in his capacity as the Court-appointed receiver ("Receiver") for Founding Partners Capital Management Company; Founding Partners Stable-Value Fund, L.P.; Founding Partners Stable-Value Fund II, L.P.; Founding Partners Global Fund, Ltd.; and Founding Partners Hybrid-Value Fund, L.P. (collectively, the "Receivership Entities"), files his Application for Allowance and Payment of Fees and Expenses (the "Motion for Fees") Incurred by the Receiver, Retained Counsel, and Other Professionals in the Above-Styled Litigation (the "Sun Litigation") and Pursuant to the Terms of the Settlement Agreement (defined *infra*), and requests that this Court enter an Order authorizing him to make payments for certain professional services and expenses incurred during the period of October 1, 2010 through October 19, 2012 (the "Application Period"). This Motion for Fees is submitted

with the approval of the United States Securities and Exchange Commission (the "SEC") and counsel for the Defendants.

The Settlement Agreement contemplates payment of the Receiver's and his professionals' fees and expenses incurred in the Sun Litigation prior to or upon closing of the Settlement Transaction:

> The Companies shall pay the reasonable out-of-pocket expenses of each Party . . . (and for the purposes of the Receiver and his professionals, such reasonable expenses relating to *Newman v. Sun Capital* Litigation as are approved by the District Court upon application by the Receiver . . .) . . . prior to closing.

[D.E. 306-2 at 23, § 9.1]

On August 28, 2012, the Court fully approved the Settlement Agreement, including section 9.1. [D.E. 308]. As such, the Receiver believed it was appropriate to bifurcate his applications for payment of fees and costs. This Motion for Fees requests payment of only those fees and expenses incurred by the Receiver, his retained counsel, and his professionals for their work in the Sun Litigation, so that these fees and expenses may be paid at the closing of the Settlement Transaction, if they are approved by this Court.

The Receiver will submit contemporaneously with this Motion for Fees a separate Fifth Application for the remainder of the fees and expenses he and his professionals have incurred in all matters outside of the Sun Litigation.

For this reason, and in light of the motion practice and extensive negotiations that went into the Settlement Agreement (detailed below), the Receiver respectfully requests that this Court authorize the Receiver to pay: (a) Broad and Cassel, as the Receiver's primary counsel, for reasonable attorneys' fees and costs[1]; (b) Berkowitz Pollack & Brant, the Receiver's accountants,

---

[1] Broad and Cassel's detailed time entries for the Sun Litigation were split into two separate detailed bills, both of which are attached.

-2-

**BROAD and CASSEL**
One Biscayne Tower, 21st Floor 2 South Biscayne Blvd. Miami, Florida 33131-1811 305.373.9400

for reasonable fees and costs[2]; and (c) Arnall Golden Gregory LLP, the Receiver's counsel, for reasonable attorneys' fees.

## I. RETENTION OF RECEIVER, DISCLOSURE OF COMPENSATION, AND REQUESTED AWARD

### A. The SEC's Motion

On April 20, 2009, the SEC filed its Complaint [SEC Action, D.E. 1] and its Emergency Motion to Appoint a Receiver [SEC Action, D.E. 3]. This Court granted the SEC's Emergency Motion to Appoint a Receiver on the same date. [SEC Action, D.E. 9].

In its Complaint, the SEC sought to permanently enjoin Founding Partners and its owner and principal William L. Gunlicks from violating antifraud provisions of the federal securities laws and a December 2007 Commission cease and desist order against them. [SEC Action, D.E. at 1]. The Commission also sought to protect and preserve approximately $550 million of investor assets at risk. *Id.* On May 13, 2009, the SEC filed a Motion to Appoint a Replacement Receiver. [SEC Action, D.E. 71].

### B. The Court Appointed Daniel Newman, Esq. as Replacement Receiver

On May 20, 2009, the Court entered its Order Appointing Replacement Receiver and appointed Daniel Newman, Esq., as Receiver for the Receivership [SEC Action, D.E. 73, the "Receivership Order"]. The Order placed the Receiver in charge of the Receivership Entities. *Id.* at 2-3. Pursuant to the Receivership Order, the Receiver was granted "full and exclusive power, duty, and authority to: administer and manage the business affairs, funds, assets, choses in action and any other property of Founding Partners and the Founding Partners Relief

---

[2] Berkowitz Pollack & Brant incurred fees and costs prior to October 1, 2010, which were not billed at the time they were incurred, but were billed during the Application Period. These fees and costs are included in this application.

Defendants; marshal and safeguard all of the assets of Founding Partners and the Founding Partners Relief Defendants; and take whatever actions are necessary for the protection of investors." *Id.* at 1-2. The Receivership Order required the Receiver to, among other things:

- take immediate possession of and administer the assets of the Receivership Entities;

- investigate the manner in which the affairs of the Receivership Entities were conducted;

- institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary;

- employ professionals as the Receiver deems necessary to take possession of the assets and business;

- engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities;

- defend, compromise or settle legal actions in which the Receivership Entities or the Receiver is a party;

- assume control of all of the Receivership Entities' financial accounts, as necessary;

- make payments and disbursements from the funds and assets taken into control as necessary in discharging the Receiver's duties; and

- have access to and review all mail of the Receivership Entities.

*Id.* at 3-6.

## II.  REQUEST FOR FEES AND EXPENSES

The Receiver, his counsel, and his consultants have worked diligently during the application period in conducting motion practice and briefing related to the Settlement Transaction in the Sun Litigation. In addition, the Receiver and his professionals were involved in due diligence and negotiated the settlement of the Sun Litigation that resulted in the Court's

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd.  Miami, Florida  33131-1811  305.373.9400

conditional approval of the Settlement Agreement on May 17, 2012, and the Court's final approval of the Settlement Agreement on August 28, 2012. [D.E. 304, 308]. The Receiver, his staff, and his counsel continue to work toward the closing of the Settlement Transaction.

The Receiver respectfully requests an award for legal and professional fees and the reimbursement of certain expenses incurred on his behalf for services rendered during the Application Period. These amounts total $1,439,940.08 in the aggregate ("Total Award"). The Total Award is comprised of: (a) $993,845.32 in legal fees and costs incurred by Broad and Cassel in connection with the Sun Litigation; (b) $439,715.56 in professional fees and costs incurred by Berkowitz Pollack & Brant, the Receiver's accountants, in connection with the Sun Litigation; (c) $6,379.20 in professional fees incurred by Arnall Golden Gregory LLP.

Significantly, the Receiver, his counsel, and his professionals worked at deeply discounted rates in performing their functions. In addition to discounting rates, the Receiver further reduced the costs to the Receivership Estate by writing off various fees incurred for work performed.[3]

While the Receiver has submitted four prior applications for fees and expenses in the SEC Action, this request is the Receiver's first application in the Sun Litigation for compensation and reimbursement of expenses. Pursuant to the terms of the Settlement Agreement, the Receiver and his professionals are due to be paid upon closing of the Settlement Transaction the amounts owed to them in connection with Sun Litigation. For this reason, the Receiver has filed this Motion for Fees in the Sun Litigation, as opposed to filing it in the SEC Action.

---

[3] Some of these write-offs are evident from the detailed billing records submitted with this application, and many more are not, as the entries were eliminated entirely.

No understanding exists between the Receiver and any other person for the sharing of compensation sought by this Receiver. As demonstrative of the efforts performed on behalf of the Receiver, the Receiver has attached several exhibits to its Application consisting of:

> Exhibit 1:   Summaries of professional and paraprofessional time and fees;
>
> Exhibit 2:   Individualized and detailed invoices of all services rendered, expenses, and disbursements for Broad and Cassel; Berkowitz Pollack & Brant; and Arnall Golden Gregory LLP.

Exhibit 1 contains an aggregate summary of all hours and fees of all professionals and paraprofessionals that provided services to the Receiver during the course of the Application Period. The total amount represents the amount of time expended by each attorney, paralegal, and professional multiplied by the applicable Court-approved hourly rate.

Exhibit 2 contains individualized and detailed descriptions of the daily services rendered and the hours expended by the various attorneys, paralegals, and professionals employed on behalf of the Receiver in this case during the Application Period. Exhibit 2 also contains a detailed schedule listing the expenses and disbursements for which the Receiver seeks reimbursement. Exhibit 2 is based on, among other information, the contemporaneous daily time records maintained by the Receiver's attorneys, paralegals, and professionals who rendered services in this case. These time records have also been reviewed and approved by the Receiver, and, based on the complexity of the case, the Receiver respectfully submits that the requested compensation is reasonable.

### III. <u>MEMORANDUM OF LAW</u>

Under governing law, following a determination that services were rendered and costs expended in furtherance of the Receivership, the Court may award compensation for those fees

and costs. When determining an award of attorneys' fees incurred during a receivership, the Court should give consideration to the factors for compensation that the Eleventh Circuit articulated in *In re Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988): (1) the time and labor required; (2) the novelty and difficulty of the question involved; (3) the skill requisite to perform the legal service properly; (4) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (5) the fee customarily charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or by the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the lawyer or lawyers performing the services; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) any awards in similar cases. *See also Securities & Exchange Comm'n v. Elliot*, 953 F. 2d 1560, 1577 (11th Cir. 1992). The Receiver respectfully suggests that his request for fees for payment of his attorneys and other professionals meets the criteria for this compensation.

In the SEC Action, the Court's Receivership Order requires the Receiver to "administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court." [SEC Action, D.E. 73 at 3]. The Receivership Order allows the Receiver to appoint "one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business...." *Id.* at 4-5. The Court further authorized payment of these professionals from the funds held by the Receivership. *Id.* at

-7-

**BROAD and CASSEL**
One Biscayne Tower, 21st Floor 2 South Biscayne Blvd. Miami, Florida 33131-1811 305.373.9400

6. Pursuant to this provision, the Court authorized the retention of counsel for the Receiver. [*See, e.g.,* SEC Action, D.E. 78].

The Receiver's attorneys, paralegals, and accountants and experts have incurred reasonable fees and costs consistent the Court's Orders, and payment is appropriate and warranted in consideration of the 11th Circuit multi-factor test propounded in *In re Norman*, as follows:

### A. The First Factor[4]

The Receiver, his counsel, and his other retained professionals expended considerable time and effort in order to perform the extensive work necessary to negotiate and settle with the Defendants in the above-styled case, including, *inter alia*:

- Engaging in due diligence of the Defendants and their related entities, including the Promise and Success hospitals (collectively, the "Settlement Defendants");

- Conducting extensive motion practice with regard to staying litigation for settlement purposes;

- Negotiating various confidentiality agreements with the Defendants to expedite settlement;

- Drafting and reviewing settlement documents and due diligence documents;

- Attending numerous multi-day settlement negotiations;

- Negotiating the sale of property belonging to the Settlement Defendants;

- Final negotiations with the Defendants on a proposed settlement agreement and drafting and filing a joint motion for the Court's approval of the same;

- Communicating directly with Investors in order to answer questions related to the proposed settlement agreement and its effect on the proposed claims process;

- Communicating with counsel for Investors who objected to the proposed settlement agreement;

---

[4] The Receiver is discussing solely those events that occurred during the Application Period.

- Drafting a written response to those Investors who objected to the proposed settlement agreement;

- Preparing for, appearing at, and presenting argument at the hearing on the fairness of the proposed settlement agreement;

- Working with Defendants to amend the language of the proposed settlement agreement to address the Court's concerns;

- Drafting a revised proposed Settlement Agreement with the Defendants;

- Holding a conference call with Investors to discuss the revised proposed Settlement Agreement;

- Working with the Defendants to ensure that all conditions of closing the Settlement Agreement are satisfied;

- Preparing and negotiating organizational documents for new Receivership entity to engage in the settlement transaction;

- Working with Defendants on various operational issues that could impact the proposed settlement;

- Working on various matters necessary to close the settlement transaction, such as healthcare licensure applications, real property transfer issues, accounting and tax issues relating to the restructuring of the Defendants, and working capital loan matters; and

- Working with Defendants on negotiating various professional engagements and fees payable by Defendants in connection with the closing of the settlement transaction.

For these reasons (which are more particularly described in the Receiver's Fourth Status Report, filed contemporaneously in the SEC Action), and in accordance with the Settlement Agreement, the First Factor favors the Court's approval of this Motion for Fees.

**B.   The Second and Third Factors**

The Receiver respectfully submits that the motion practice, negotiations with the Defendants, and development of the Settlement Agreement were unusually difficult and challenging, requiring skill and patience to manage, for the following reasons:

**BROAD and CASSEL**
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd. Miami, Florida  33131-1811  305.373.9400

- The Receiver and the Defendants remained adverse to one another, even after they had agreed to a settlement, because there was always the chance the Court could disapprove of the settlement and litigation would restart;

- There are numerous entities involved with and related to the Defendants, and they also had to be considered during negotiations and settlement;

- There are hundreds of Investors with interests at stake, some of whom have different goals;

- Some Investors did not support the current Settlement Agreement when it was first proposed;

- Some Investors brought their own lawsuits against the Receivership Entities and/or the Defendants;

- Numerous confidentiality agreements were required to be drafted and executed before the Receiver and the Defendants could effectively negotiate;

- Almost every issue involved in the Sun Litigation prior to settlement was vigorously contested by both the Receiver and the Defendants[5];

- The Settlement Transaction, though in the best interest of the Investors, is itself a complicated and difficult corporate transaction with numerous moving parts that require outside counsel and other professionals to effectuate;

- Some Investors worked directly with the Defendants to come to their own settlement agreement without the Receiver's input or approval; and

- Many individual Investors, and some groups of Investors, retained their own counsel, who also sat in on and/or directly influenced negotiations.

For these reasons, the Receiver submits that the motion practice, negotiations, and eventual settlement of the Sun Litigation, were all unusually difficult and challenging, requiring inordinate skill and patience to manage.

---

[5] In its order approving the revised Settlement Agreement, the Court noted that, "[i]ssues seem to abound, and no issue seems too small to demand close attention and substantial memoranda." [D.E. 308 at 26].

### C. The Seventh and Eighth Factors

The results obtained have been significant, especially given the complex, challenging nature of the proceedings in the Sun Litigation and the numerous other demands on the Receiver and his professionals. The Receiver and his professionals engaged in significant briefing, diligence, negotiation, and settlement efforts, more thoroughly detailed in the Fourth Status Report, which were ultimately productive and resulted in a fair, reasonable, and adequate Settlement Agreement approved by this Court on August 28, 2012 [D.E. 308].

### D. The Other Factors

In view of the numerous, varied, and time-sensitive demands on the Receiver and his professionals, they could not accept similar or more profitable employment as a result of the work in this Receivership. (Factor 4).

The fees are reasonable in the relevant locality for similar services. Indeed, most of the professionals further reduced their fees for this matter. (Factor 5).

The fees are fixed, but mostly at a discounted rate. (Factor 6).

Finally, the Settlement Agreement itself contemplates the payment of the reasonable fees and costs owed to the Receiver, his counsel, and his professionals in connection with the Sun Litigation, if they are approved by this Court. [D.E. 249 at ¶ 9.1]. In view of these circumstances, and in accordance with the terms of the Settlement Agreement, this request for fees and expenses, which are the result of discounted and reduced rates, is appropriate and warranted. (Factor 12).

## **CONCLUSION**

For these reasons, and pursuant to the terms of the Settlement Agreement, the Receiver, Daniel S. Newman, respectfully requests that this Court enter an Order authorizing the payment of $1,439,940.08, to be paid at the closing of the Settlement Transaction, consisting of (a) $993,845.32 to Broad and Cassel, reflecting all of the fees and costs invoiced by Broad and Cassel in connection with the Sun Litigation; (b) $439,715.56 to Berkowitz Pollack & Brant reflecting all of the fees and costs invoiced by Berkowitz Pollack & Brant in connection with the Sun Litigation; and (c) $6,379.20 in professional fees incurred by Arnall Golden Gregory LLP.

Dated: January 14, 2013.

Respectfully submitted,

By:    /s/ Jonathan Etra
      Jonathan Etra
      jetra@broadandcassel.com
      Florida Bar No. 0686905
      BROAD AND CASSEL
      2 South Biscayne Blvd., 21st Floor
      Miami, FL 33131
      Tel.: 305.373.9447
      Fax: 305.995.6403
      *Attorneys for Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

By: ___/s/ Jonathan Etra___

## SERVICE LIST

Jonathan Galler, Esq.
Proskauer Rose LLP
2255 Glades Rd
Suite 421 Atrium
Boca Raton, FL 33431
**Tel: 561.995.4733**
**Fax: 561.241.7145**
jgaller@proskauer.com
*Counsel for Defendants*
*Service via CM/ECF*

Sarah S. Gold, Esq.
Karen E. Clarke, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
**Tel: 212.969.3000**
**Fax: 212.969.2900**
sgold@proskauer.com
kclarke@proskauer.com
*Counsel for Defendants*
*Service via CM/ECF*

BROAD and CASSEL
One Biscayne Tower, 21st Floor  2 South Biscayne Blvd. Miami, Florida 33131-1811  305.373.9400