UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – FORT MYERS DIVISION

Case No. 2:09-cv-445-FtM-29SPC
_____

DANIEL S. NEWMAN, as Receiver for Founding Partners
Capital Management Company; Founding Partners
Stable-Value Fund, L.P.; Founding Partners Stable-Value
Fund II, L.P.; Founding Partners Global Fund, Ltd.; and
Founding Partners Hybrid-Value Fund, L.P.,

                       Plaintiff,

vs.

SUN CAPITAL, INC., a Florida corporation, SUN
CAPITAL HEALTHCARE, INC., a Florida corporation,
and HLP PROPERTIES OF PORT ARTHUR, LLC, a
Texas limited liability company,

                       Defendants.
_____

## RECEIVER'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR COURT APPROVAL OF FP DESIGNEE BOARD MEMBER DESIGNATIONS

Pursuant to Court Order [D.E. 333], the Receiver Daniel S. Newman, not individually, but solely in his capacity as the Court-appointed receiver ("Receiver") for Founding Partners Capital Management Company; Founding Partners Stable-Value Fund, L.P.; Founding Partners Stable-Value Fund II, L.P.; Founding Partners Global Fund, Ltd.; and Founding Partners Hybrid-Value Fund, L.P., files this reply in further support of its Motion for Court Approval of FP Designee Board Member Designations. [D.E. 322].

## INTRODUCTION

The only difference between the Receiver's position and Edge's position is *one investor board seat.* The issue is whether Edge has shown that the Receiver's nominee, Mr. Edmund Woodbury, a businessman and former mayor, is so unqualified to be a board member that he

must be replaced with Mr. Tamine.  Edge has not met its burden.  Mr. Woodbury is highly qualified and should be permitted to serve.

The FP Designee's governing documents – approved by the Court [D.E. 308], without objection from Edge – provide that FP Designee will be managed, in the interim period between the closing of the settlement transaction and the completion of the claims process, by a five-member board, comprised of the Receiver and four investor representatives to be selected by the Receiver, subject to Court review, if the Court chooses to review the Receiver's slate.

Pursuant to the FP Designee governing documents, the Receiver carefully considered potential candidates, taking into account their experience and qualifications, their temperament and ability to get along with others, the mix of large and small investors, and the mix of investor factions.  [D.E. 322 at 4-6].  Following his investigation and analysis, the Receiver proposed the following slate of investor representatives: (a)  Mr. Ian Stokoe, the Cayman-appointed Joint Provisional Liquidator ("JPL") for the offshore feeder fund, who is aligned with the investor group; (b) Mr. James Brown, a fund manager, former partner in a large law firm, and a member of the investor group; (c) Mr. Keith Kennedy, a lawyer who advises a large investor, who is not a member of the investor group, and whose fund did not join Mr. Singer's objection to the Settlement Agreement; and (d) Mr. Woodbury.  *Id.* at 3-4.

Mr. Woodbury has extensive business experience in the public and private sector – having run his own business and having served as mayor of a city – that is different, and in some ways more practical and useful, than the other investor representatives.  [*See id.*; D.E. 322-5]. Mr. Woodbury is the only proposed representative that would represent the interests of smaller investors whose personal funds are at stake, and who comprise approximately *89% of investors in number* and approximately *25% of invested capital*.  [D.E. 322 at 6].  He is also the only

-2-

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400

proposed investor representative who represents the interests of the many investors who joined Mr. Singer's objection to the Settlement Agreement, and also signed releases and wish to play a meaningful role in FP Designee. *Id.*

### EDGE HAS NOT SHOWN THAT THE RECEIVER'S NOMINEE, MR. WOODBURY, IS NOT QUALIFIED AND MUST BE REPLACED BY MR. TAMINE

*First*, and most importantly, Edge has not argued – nor can it – that Mr. Woodbury is manifestly unsuited to the task. On that ground alone, Edge's opposition to the Receiver's motion should be denied. Mr. Woodbury is qualified and should be permitted to serve.

*Second*, Edge argues there is no need for Mr. Woodbury's service because his only value is in protecting smaller investors, and the Receiver was put on the board for that limited purpose. [D.E. 328 at 2]. This assertion is inaccurate. Aside from the fact that Mr. Woodbury is qualified and should be permitted to serve on his own merits, the Receiver is a board member because FP Designee is a subsidiary of a receivership entity, *not* because he is the designated protector of small investors. The Receiver acts for all investors, and cannot favor one group over another.

*Third*, Edge complains the Receiver has no personal funds at stake. [D.E. 328 at 2]. However, the Receiver will serve as a board member, whether the Court permits Mr. Woodbury to occupy the final seat, or rejects Mr. Woodbury's candidacy in favor of Mr. Tamine. The Receiver, as the Court-appointed fiduciary, cannot have personal funds at stake. The same goes for Mr. Stokoe, also a court-appointed fiduciary, who Edge wants on the board.[1]

*Fourth*, Edge argues that Mr. Tamine, as a member of the investor group, helped negotiate the term sheet, and gained certain knowledge of the facilities. *Id.* at 3, 7. The Receiver

---

[1] In several rounds of briefings, Edge has yet to proffer that Mr. Tamine has personal funds at stake. Assuming *arguendo* he does not, Edge's argument would bar Mr. Tamine from serving.

-3-

has ensured that two of the four investor seats (50%) represent the views of the investor group.[2] The third seat requested by Edge would give one faction a majority lock on all decisions, undermining the concept of the interim board. The governing documents, approved by the Court without objection from Edge, properly do not compel the Receiver to select only members of the investor group or to give that faction a majority lock.

*Fifth*, Edge states it lost more money than any other victim of Founding Partners' fraud scheme [D.E. 322 at 2, 6] – a dubious distinction for a fund manager. Three of the four investor seats (75%) have large holdings (including Mr. Stokoe who effectively answers to Mr. Tamine)[3] who can look out for Edge's interests. [D.E. 322 at 4]. The governing documents properly do not compel the Receiver to select the four largest investors to serve.

*Sixth*, with Mr. Stokoe holding one of the four investor seats[4], Edge, which holds approximately 10% of invested capital, effectively controls *25%* of investor seats on the board [D.E. 324 at 4]. *If Mr. Tamine took Mr. Woodbury's seat, Edge would effectively control 50% of the investor seats, although it invested only approximately 10% of the capital* [*id.*], *while the smaller investors, who represent 25% of invested capital (and 89% of the number of investors), would have **no** investor representation.* While the Court-approved governing documents do not require perfect *pro-rata* representation for investor factions, Edge's proposal would create an extraordinarily imbalanced board. In response to these facts, Edge resorts to sleight-of-hand, by

---

[2]   [D.E. 322 at 6]. Mr. Brown is a member of the Investor group. Mr. Stokoe is not formally a member but is aligned with Edge and has been involved with and supportive of group. *Id.* The Receiver does not agree with Mr. Tamine's claim that he is the most qualified or suitable investor.

[3]   Edge's argument that Mr. Stokoe "answers to the liquidation committee – not Evatt Tamine" [D.E. 328 at 6] misses the Receiver's point. Due to Edge's dominant position on the liquidation committee, Mr. Stokoe effectively answers to Edge.

[4]   Notably, Edge is an indirect investor through the offshore feeder fund, which is represented by Mr. Stokoe, who already has a board seat.

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.   Miami, Florida   33131-1811   305.373.9400

using all five seats – including the Receiver's seat, who acts for all investors equally – as its denominator in calculating percentages of investor seats. [D.E. 328 at 6].

*Seventh*, although Mr. Tamine's declaration is misleading,[5] it concedes the Receiver's central point – Mr. Tamine initially *refused* to be considered for a seat, despite now viewing himself as the most qualified and important investor. [D.E. 328 at 7]. The Receiver was compelled to move forward with the process and on licensing matters without him, and reversing course now would impede the closing. *Id.*[6]

*Finally*, Edge's recent filings confirm the wisdom of the Receiver's slate. Mr. Tamine's conduct – from his coercive tactics and inaccurate statements to the Court [*See generally* D.E. 334; SEC Action, D.E. 377], to Edge's admissions that it withheld information from the Receiver, undermining the Court's Order [D.E. 334 at 4] – render him a less than ideal candidate for a board seat.

## CONCLUSION

Edge has not sustained its burden of proving that the Receiver's nominee, Mr. Woodbury, is so unqualified that he must be replaced with Mr. Tamine. The Receiver's motion [D.E. 322] should be granted, and Edge's motions [D.E. 316; SEC Action, D.E. 369], which would alter the Receiver's proposed board composition, should be denied. The Court should approve the Receiver's proposed slate of investor representatives or decline to review it.

---

[5]   See declaration of Daniel S. Newman, attached as **Exhibit A**.

[6]   Much of Edge's opposition is devoted to anti-Receiver rants [D.E. 328 at 3-5], irrelevant to the issue at hand. Although Edge's false allegations are addressed elsewhere, Edge's claim here that "*the Receiver has insisted on personally conducting all efforts to obtain a line of credit*" [*id.* at 5; emphasis added] deserves special mention as among the tallest of Edge's many tall tales. It is negated by Edge's simultaneous insistence that the Defendants and the investor group's professionals are involved in this process [*id.*], and is also knowingly inaccurate given that Edge is well-aware that Cain Brothers, which was retained by the Defendants (not the Receiver), is working to procure the line of credit and is in direct contact with lenders. [SEC Action, D.E. 377-1].

**BROAD and CASSEL**
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.   Miami, Florida   33131-1811   305.373.9400

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

Dated:  March 13, 2013.

Respectfully submitted,

By:  ___/s/ Jonathan Etra_____
     Jonathan Etra
     jetra@broadandcassel.com
     Florida Bar No. 0686905
     BROAD AND CASSEL
     2 South Biscayne Blvd., 21st Floor
     Miami, FL  33131
     Tel.:  305.373.9447
     Fax:  305.995.6403
     *Attorneys for Receiver*

## **SERVICE LIST**

| | |
|---|---|
| Jonathan Galler, Esq.<br>Proskauer Rose LLP<br>2255 Glades Rd<br>Suite 421 Atrium<br>Boca Raton, FL 33431<br>**Tel: 561.995.4733**<br>**Fax: 561.241.7145**<br>jgaller@proskauer.com<br>*Counsel for Defendants*<br>***Service via CM/ECF*** | Sarah S. Gold, Esq.<br>Karen E. Clarke, Esq.<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036-8299<br>**Tel: 212.969.3000**<br>**Fax: 212.969.2900**<br>sgold@proskauer.com<br>kclarke@proskauer.com<br>*Counsel for Defendants*<br>***Service via CM/ECF*** |
| Mindy Mora, Esq.<br>Bilzin Sumberg Baena Price & Axelrod LLP<br>1450 Brickell Avenue, 23rd Floor<br>Miami, FL 33131<br>**Tel: 305.350.2414**<br>**Fax: 305.351.2242**<br>mmora@bilzin.com<br>jsnyder@bilzin.com<br>*Counsel for Edge Capital*<br>***Service via CM/ECF*** | |

BROAD and CASSEL
One Biscayne Tower, 21st Floor   2 South Biscayne Blvd.  Miami, Florida  33131-1811   305.373.9400