Execcution Copy

# SPECIALTY FINANCE PARTNERS LLC

<u>Agreement for Services</u>

      This Agreement (the "<u>Agreement</u>") is entered into as of May 16, 2013 and made effective as of the 1st day of March, 2013 by and among Sun Capital, Inc., Sun Capital Healthcare, Inc., Promise Healthcare, Inc., Success Healthcare, LLC and the direct and indirect subsidiaries of any of the foregoing (individually and collectively, the "<u>Company</u>"), Founding Partners Designee, LLC (the "<u>FP Designee</u>"), and Specialty Finance Partners LLC (d/b/a Specialty Finance Advisors LLC) ("<u>SFP</u>").

<u>Background</u>

      A.     SFP has provided advisory and consulting services to SSR Capital Partners, LP, Edge Capital Investments Ltd., Rhino Holdings, Convergent Wealth Advisors and Bermuda Commercial Bank Limited (individually and collectively, the "<u>Investor Steering Committee</u>") since February of 2010 with respect to various proposed transactions and settlements (individually and collectively, the "<u>Settlement Efforts</u>") with or involving the Investor Steering Committee, the Company and/or other parties or persons relating to litigation between the Company and Daniel S. Newman, as receiver (the "<u>Receiver</u>") of Founding Partners Capital Management Company, Founding Partners Stable-Value Fund, L.P., Founding Partners Stable-Value Fund II, L.P., Founding Partners Global Fund, Ltd., and Founding Partners Hybrid-Value Fund, L.P. (individually and collectively, the "<u>Receivership Entities</u>").

      B.     SFP has been engaged by the Investor Steering Committee (the "<u>Steering Committee Engagement</u>") since February of 2010.  During such engagement, SFP has been working closely with the Investor Steering Committee, primarily through its counsel, Patton Boggs LLP ("<u>Patton</u>"), the Receiver and the Company in connection with the Settlement Efforts.  The Settlement Efforts with respect to which SFP had provided such assistance have included, but not been limited to, (i) the negotiation and conclusion of a restructuring and settlement plan pursuant to the terms of the term sheet, dated May 19, 2010, and a proposed settlement agreement (collectively, as amended or modified, the "<u>Restructuring Plan</u>") that was approved by that certain Amended Opinion and Order (as modified or amended, the "<u>Settlement Agreement Approval Order</u>") issued by Judge John E. Steele on August 28, 2012, in *Daniel S. Newman, as a Receiver for Founding Partners Capital Management, et al v. Sun Capital, Inc., et al*, Case No. 2:09-cv-445-FtM-29SPC, United States District Court, Middle District of Florida, Fort Myers Division (the "<u>Receivership Litigation</u>"), (ii) supervision of the financial and regulatory due diligence and the Restructuring Plan, (iii) interfacing with the principals of the Company and their counsel and (iv) interfacing with, and managing the relationships with and work of, various other professional advisors with regard to the Restructuring Plan.  As used in this Agreement, "<u>Settlement Date</u>" shall mean the date and time on which the closing of the transactions contemplated by the settlement agreement approved by the Settlement Agreement Approval Order, as the same may be amended or modified, actually occurs (provided that, if any such amendment or modification provides for multiple closings of transactions contemplated by such settlement agreement, then the date and time of the closing of the first transaction contemplated thereby).  The period from the commencement of the Steering Committee Engagement in February 2010 to and including the Settlement Date is hereinafter referred to as the "<u>Pre-Settlement Period</u>".

      C.     The Company and the FP Designee (i) acknowledge that the work of SFP for the Investor Steering Committee in connection with the Settlement Efforts has provided material value to the Company and the FP Designee during the Pre-Settlement Period to date, (ii) desire that SFP terminate its engagement with the Investor Steering Committee as of the date of this Agreement, (iii) desire that SFP provide such consulting and advisory services for FP Designee for the remainder of the Pre-Settlement Period, and (iii) desire that SFP, during the eighteen (18) month period immediately following the


Settlement Date (the "<u>Post-Settlement Period</u>"), provide certain consulting and advisory services to the Company and the FP Designee as further described herein.

       D.      The Investor Steering Committee has consented to allow SFP to enter into this Agreement.

<div align="center">Agreement</div>

In consideration of the foregoing, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

       1.      <u>The Engagements</u>.

       (a)  The FP Designee hereby engages SFP on a non-exclusive basis to provide the consulting and advisory services described below from the date of this Agreement during the Pre-Settlement Period, and SFP accepts this engagement.

       (b)  The Company and the FP Designee hereby engage SFP on a non-exclusive basis to provide the consulting and advisory services described below during the Post-Settlement Period, and SFP accepts this engagement.

       2.      <u>Services</u>.  The scope of SFP's engagement shall be limited to those matters expressly set out in this Agreement.  The services to be provided by SFP under this Agreement are hereinafter referred to as the "<u>Services</u>".

       (a)      <u>Services During Pre-Settlement Period</u>.  After the date hereof during the Pre-Settlement Period, SFP shall provide to FP Designee the Services described below:

       (i)      advice with respect to the consummation of the transactions contemplated by the Settlement Agreement;

       (ii)      assistance with the selection of a working capital lender for the Company and with the negotiation of the terms thereof: and

       (iii)      such other services as SFP and FP Designee may from time to time agree relating to the Settlement Efforts and/or the Restructuring Plan.

Any advice (oral or written) rendered to FP Designee during the Pre-Settlement Period by SFP in connection with its Services hereunder, as well as the Restructuring Plan and any written materials provided by SFP, will be solely for the benefit and confidential use of the FP Designee and the Receiver, and will not, on or after the date of this Agreement, be reproduced, summarized, described or referred to or given to any other person for any purpose without SFP's and FP Designee's prior consent unless provided by Receiver on a non-reliance basis to those investors in the Receivership Entities that have executed confidentiality agreements covering such disclosures.

       (b)      <u>Services During Post-Settlement Period</u>.  During the Post-Settlement Period, SFP shall provide to the Company and the FP Designee the Services described below:

       (i)      financial, managerial, and strategic advice and assistance in connection with the operations of the Company, in each case, in SFP's sole discretion (in consultation with the FP Designee and the Company); and

      (ii) such other services as SFP, the FP Designee and the Company may from time to time agree.

Subject to insurance acceptable to SFP, SFP will also allow certain of its qualified personnel to serve on the board of directors of any Company following the Settlement Date. In the event that Dean Graham or Keith Reuben serve on any board of any Company during the Post-Settlement Period, any other board fees payable to such Dean Graham or Keith Reuben as a Company board member will be waived with respect to that period; <u>provided, however</u>, all fees, expenses and costs not related to board of director payments shall not otherwise be waived hereunder and <u>provided</u>, <u>further</u>, Dean Graham and Keith Reuben (or either of them who is on the board) will be entitled to (x) reimbursement of costs and expenses and (y) grants of options or other equity, each in a manner that is equivalent to such rights provided to other members of the Company's board of directors.

Any advice (oral or written) rendered during the Post-Settlement Period by SFP in connection with its Services hereunder will be solely for the benefit and confidential use of the Company, FP Designee and the Receiver, and will not, on or after the date of this Agreement, be reproduced, summarized, described or referred to or given to any other person for any purpose without SFP's, the Company's and, as applicable, FP Designee's prior written consent unless provided by the Company, FP Designee, SFP or, as applicable, the Receiver on a non-reliance basis to those investors in the Receivership Entities that have executed confidentiality agreements covering such disclosures.

   3. <u>Obligation for All Payments of All SFP Fees, Expenses and Costs</u>. Subject to the terms and conditions set forth in this Agreement (including without limitation, the provisions of Sections 4 and 6(b) hereof), the Company hereby acknowledges and agrees that it shall be liable for all of SFP's fees, expenses and costs under this Agreement, but not including any incurred prior to the date hereof, except as otherwise provided herein, and the Company shall make such payments directly to SFP in accordance with the payment terms and payment instructions below. Except as expressly provided in Section 10 hereof with respect to the FP Designee, in no event shall the Receiver or any of the Receivership Entities or the FP Designee or any owners, officers, managers or directors of any of the foregoing, be responsible or liable in any capacity for any of SFP's invoices, fees, expenses, costs, damages or other liabilities or otherwise be liable to SFP or any other person or entity for any reason in connection with this engagement or this Agreement; <u>provided</u>, <u>however</u>, that the foregoing shall not relieve FP Designee of responsibility for its gross negligence or willful misconduct. This Agreement supersedes any prior engagement letters or related agreements between SFP and the Company or any agreements by the Company to pay SFP any fees or expenses related in any manner to the Settlement Efforts or the Restructuring Plan. All obligations of the Company, or any of them, under this Agreement shall be joint and several.

   4. <u>Payment of SFP Fees, Expenses and Costs</u>. As compensation for SFP's services rendered prior to the date hereof relating in any manner to the Settlement Efforts or the Restructuring Plan, including relating to the Steering Committee Engagement, and SFP's agreement to render any future Services under this Agreement with respect to the Pre-Settlement Period to the FP Designee, and for SFP's agreement to render Services to the FP Designee and the Company under this Agreement with respect to the Post-Settlement Period, the Company shall pay SFP the following fees:

    (a) $500,000.00, which sum shall be due and payable on the Settlement Date (the "<u>Closing Payment</u>"), whether or not this Agreement was terminated prior to the Settlement Date (except as otherwise provided in Section 18 hereof); <u>provided</u>, <u>however</u>, that, if prior to the Settlement Date, the Company has sufficient available cash flow, as determined by the Company in its sole discretion, the Company shall begin to pre-pay such $500,000.00 sum; <u>plus</u>

    (b) for March 2013 and each subsequent calendar month commencing prior to the earlier of (i) the Settlement Date and (ii) the termination of this Agreement, $35,000.00, pro-rated for any

partial months (the "Section 4(b) Fee"); provided, that, for any such months commencing September 2013, the parties agree to negotiate in good faith a revised Section 4(b) Fee, which revised amount will be between $25,000 to $35,000 per month. Each installment of the Section 4(b) Fee shall be due and payable on the first (1st) day of the calendar month immediately following the month to which such Section 4(b) Fee pertains (the month to which such Section 4(b) Fee pertains, the "Subject Month"), and the obligation to pay any such installment (subject to pro-ration) shall not be extinguished by the occurrence of the Settlement Date or the termination of the Agreement during or after the Subject Month; provided, however, that if the Company does not have sufficient available cash flow to pay the Section 4(b) Fee, as determined by the Company in its sole discretion, then the Section 4(b) Fee may be deferred; provided, further, that any such deferred amounts must be paid by the earlier of: (x) the Settlement Date, or (y) February 28, 2014; provided, further, no installment of the Section 4(b) Fee shall be payable until the Court approves this Agreement as provided in Section 18, and any such deferred installments shall be payable within fifteen days after such Court approval; plus;

(c) $125,000 per month, commencing with the calendar month immediately following the month in which the Settlement Date occurs and ending with the month which is the eighteenth (18th) month following the month in which the Settlement Date occurs (the "Guaranteed Post-Settlement Period Fee"), each such sum shall be due and payable on the fourth (4th) day of the calendar month to which such fee pertains (it being understood and agreed by the Company that the full eighteen (18) months of the Guaranteed Post-Settlement Period Fee shall be deemed fully-earned, non-refundable and not subject to pro ration or reduction upon the occurrence of the Settlement Date, whether or not this Agreement has been terminated prior to the Settlement Date, except as otherwise provided in Sections 6(b) and 18 hereof).

In addition to fees payable to SFP under this Agreement, the Company agrees to promptly reimburse SFP, upon request, for any and all of its reasonable out-of-pocket expenses and costs (i) incurred after the date hereof in connection with SFP's Services under this Agreement; provided, however, that prior to engaging any legal counsel in connection with its Services hereunder, SFP shall obtain the FP Designee's prior written approval thereof, or (ii) incurred in connection with the negotiation of this Agreement or any documents relating to any principal of SFP serving on the board of any Company, including, without limitation, in the case of this clause (ii), the fees and expenses of SFP's legal counsel, Latham & Watkins LLP, in connection therewith, which firm (for the avoidance of doubt) is hereby approved; provided, further, notwithstanding the foregoing to the contrary, (A) the amounts payable under clause (ii) of this paragraph shall in no event exceed $50,000 and shall be payable promptly after the execution of this Agreement and (B) if the Company does not have sufficient available cash flow to pay the amounts payable under clause (i) of this paragraph, as determined by the Company in its sole discretion, then such amounts may be deferred; provided, further, that any such deferred amounts must be paid by the earlier of: (x) the Settlement Date, or (y) February 28, 2014.

Notwithstanding anything to the contrary in this Agreement, upon an Acceleration Event (or in the event an Acceleration Event occurs prior to the Settlement Date, on the Settlement Date), the Company shall pay to SFP, in a lump sum within three days of the date of such Acceleration Event (or, if later, on the Settlement Date), all amounts owed to SFP under this Agreement, including, in each case to the extent not paid as of such date, (i) the entire Closing Payment, (ii) all amounts owed under Section 4(b) with respect to months commencing prior to such Acceleration Event (or, if later, the Settlement Date), (iii) the entire Guaranteed Post-Settlement Period Fee, and (iv) all other expenses with respect to which SFP is entitled to reimbursement pursuant to this Agreement. For the purposes of this Agreement, an "Acceleration Event" shall mean any of the following: (I) (A) a sale, lease, exchange, transfer or other disposition, in one or more transactions, of (i) all or substantially all of the assets of (x) Promise Healthcare, Inc. or (y) the entities included in the Company or (ii) a controlling interest in Promise Healthcare, Inc. or all or substantially all of the entities included in the Company, or (B) a merger or consolidation of Promise Healthcare, Inc. or all or substantially all of the entities included in the Company with or into another

entity; provided, that Acceleration Event shall not include the transfer of interests (directly or indirectly) in the Company to the FP Designee pursuant to the Settlement Agreement Approval Order or any transfer of interests in the FP Designee to investors by the Receiver in connection with the claims process as approved by the Court; or (II) a sale, lease, exchange, transfer or other disposition, in one or more transactions, of all or substantially all of the assets of, or a controlling interest in, Success Healthcare, LLC ("Success") or a merger or consolidation of Success, in either case which results in available net proceeds of at least $30,000,000; provided, that for all purposes of this Agreement "available net proceeds" shall mean the net consideration received by Success and/or the FP Designee (in the aggregate, without duplication) from such transaction, after payment of all transaction costs and expenses (including but not limited to, consulting and professional fees) and after payment of all liabilities of Success, including but not limited to, any amounts owed in good faith to any other entity comprising the Company as a result of an arms-length transaction between Success and such entity (and excluding any liabilities of Success as guarantor with respect to any such entities).

5.   Payment Terms.  Amounts remaining outstanding for more than 30 days (after giving effect to any deferral expressly permitted in Section 4) will be past due, and each such amount will thereafter be payable with interest (accruing from and after the date on which such amount was due, after giving effect to any such deferral) at the rate of 0.5% per month, and SFP reserves the right to suspend further Services until payment is received on past due invoices, in which event SFP will not be liable for any resulting loss, damage or expense connected with such suspension.  All payments to SFP hereunder shall be made either in cash or by wire transfer of immediately available federal funds to the following deposit account of SFP:

> Specialty Finance Partners LLC
> Bank of America
> Account #:  004129805344
> ABA #:  026-009-593

6.   Termination.

(a)   At any time, the FP Designee may terminate this Agreement upon fifteen (15) business days prior written notice to SFP to that effect and, as of such termination, this Agreement shall have no further force or effect; provided, however, that, notwithstanding such termination, the provisions of Sections 2 (solely with respect to the limitations therein on the use and disclosure of advice rendered by SFP), 3, 4 (subject to Section 6(b)), 5, 6, 8 (subject to the terms thereof), 9, 10, 11, 12, 13, 14, 15, 16, 18, and 19 will remain operative and in full force and effect.  For the avoidance of doubt, the parties acknowledge and agree that, irrespective of any such termination of this Agreement, to the extent not previously paid, SFP will be entitled to receive the fees contemplated by Section 4 (subject to Section 6(b)) and reimbursement of any expenses required to be reimbursed to SFP under this Agreement (whether or not such amounts were payable under this Agreement with respect to any period prior to the date of termination, provided that payment of such amounts (solely to the extent provided in Section 4) will be subject to the occurrence of the Settlement Date).

(b)   The following shall constitute "for cause" for purposes of this Section 6(b): SFP's substantial abandonment of its duties under this Agreement at any time prior to the Settlement Date.  In the event that (i) (A) the FP Designee terminates this Agreement for cause any time prior to the Settlement Date, (B) the FP Designee's notice of termination pursuant to Section 6(a) describes in reasonable detail the alleged grounds for such termination for cause, and (C) SFP fails, prior to such termination, to cure in all material respects its violations of this Agreement identified in such notice, to the extent such violations are then curable; provided that the FP Designee shall not be required hereby to provide  contemporaneous formal notice under Section 19 of this Agreement of each act or omission which may comprise any part of SFP's alleged substantial abandonment, but rather shall only be required

to provide such notice once it believes SFP's conduct constitutes substantial abandonment, or (ii) SFP terminates this Agreement without cause at any time prior to the Settlement Date, notwithstanding Section 4(c) of this Agreement, SFP will not be entitled to $250,000 of the Guaranteed Post-Settlement Period Fee, comprising the final two (2) months of installments payable under Section 4(c), and such forfeiture of the right (contingent upon the Settlement Date) to receive such payments shall be considered liquidated damages, and the sole and exclusive remedy of the Company and the FP Designees, for such substantial abandonment or termination.

(c) SFP may terminate this Agreement for cause (as defined below) upon written notice to the FP Designee to that effect and, as of such termination, this Agreement shall have no further force or effect; provided, however, that, notwithstanding such termination, the provisions of Sections 2 (solely with respect to the limitations therein on the use and disclosure of advice rendered by SFP), 3, 4 (subject to Section 6(b)), 5, 6, 8 (subject to the terms thereof), 9, 10, 11, 12, 13, 14, 15, 16, 18, and 19 will remain operative and in full force and effect. For the avoidance of doubt, the parties acknowledge and agree that, irrespective of any such termination of this Agreement, to the extent not previously paid, SFP will be entitled to receive the fees contemplated by Section 4 (subject to Section 6(b)) and reimbursement of any expenses required to be reimbursed to SFP under this Agreement (whether or not such amounts were payable under this Agreement with respect to any period prior to the date of termination, provided that payment of such amounts (solely to the extent provided in Section 4) will be subject to the occurrence of the Settlement Date). The following shall constitute "for cause" for purposes of this Section 6(c): (i) the failure of the Company or the FP Designee to make any payments due to SFP pursuant to this Agreement within ten days of the date when due; or (ii) the failure of the Company or the FP Designee to observe or perform any material non-monetary covenant or condition contained in this Agreement; provided that if (solely in the case of a non-monetary failure) any such failure is susceptible to cure, then it shall not be considered a for cause event if such failure is cured within thirty days after SFP sends the FP Designee and the Company written notice thereof.

7. <u>Independent Contractor Status</u>.  FP Designee, the Company and SFP acknowledge and agree that SFP is acting hereunder as an independent contractor and not as an employee of FP Designee, the Company, or the Receiver. In no event shall this Agreement be construed as establishing any other relationship between SFP and any one or more of the Company, the Receiver or FP Designee. Without limiting the generality of the foregoing, neither SFP nor any of its personnel shall be deemed to be an agent, employee, officer, director or member of or partner in FP Designee, the Company or the Receiver. Further, nothing in this Agreement shall create a partnership, joint venture or similar relationship between SFP and any one or more of FP Designee, the Company or the Receiver. SFP shall be liable for the payment of all social security and other taxes and benefits for its employees. SFP does not have, and shall not hold itself out as having, any right, power or authority (a) to create any contract or obligation, either express or implied, on behalf of, in the name of, or binding upon FP Designee, the Company or the Receiver or (b) to accept legal process on behalf of FP Designee, the Company, or the Receiver. This Agreement does not create, and will not be construed as creating, rights enforceable by any person or entity not a party hereto. FP Designee and the Company acknowledge and agree that SFP is not and will not be construed as a fiduciary of FP Designee, the Company, or the Receiver or any affiliate thereof and will have no duties or liabilities to the securityholders or creditors of FP Designee, the Company, or the Receiver, any affiliate of FP Designee, the Company, or the Receiver, or any other person or entity by virtue of this Agreement or the engagement of SFP hereunder, all of which duties and liabilities are hereby expressly waived. Neither securityholders nor creditors of FP Designee or the Company or the Receiver, or any affiliate thereof are intended beneficiaries hereunder.

8. <u>Confidentiality</u>. SFP understands and agrees that, with respect to Services provided hereunder, it will act at the direction of and under the supervision of the FP Designee (during the Pre-Settlement Period) and the FP Designee and the Company (during the Post-Settlement Period). SFP understands that work performed by SFP as part of this engagement with respect to the Services provided

to FP Designee and, as applicable, the Company, including, without limitation, any reports SFP may prepare, is intended and expected to be confidential.  SFP agrees to maintain in strict confidence any information of a non-public nature relating to the FP Designee, the Company, the Receiver, or any of their respective businesses that SFP may gain or develop in the course of its engagement under this Agreement (collectively, subject to the exclusions in the immediately following sentence, the "Information").  SFP shall not disclose any such Information to any person other than FP Designee or the Company or their respective Representatives during or after its engagement under this Agreement; provided, however, that (a) the following information shall be excluded from the Information subject to this Section 8: (i) information that was in SFP's possession prior to the commencement of the Pre-Settlement Period; (ii) information that is or, subsequent to its disclosure hereunder, becomes publicly available; (iii) information that is or becomes available to SFP from any third party if SFP did not know that such third party owed a contractual, legal or fiduciary obligation of confidentiality to the FP Designee or the Company with respect to such information; (iv) information that SFP discloses as required by law or order of court; (v) information that is disclosed with the written consent of FP Designee or (after the Settlement Date) the Company, or (vi) information that was or is independently developed by SFP without reliance on the Information, and (b) SFP may disclose the Information to its affiliates and its and their directors, officers, employees, advisors, independent contractors, agents, members, attorneys, accountants, consultants, partners, subcontractors, stockholders, controlling persons, and representatives (collectively, "Representatives"), provided that SFP will be responsible for any breach of this Section 8 by SFP's Representatives with respect to Information provided to such Representative by or on behalf of SFP.  If access to any of such Information is sought by any person or entity other than FP Designee or the Company, or their respective Representatives, SFP will, to the extent legally permissible and practicable, (x) promptly notify FP Designee or (on or after the Settlement Date) the Company of such action and (y) cooperate with FP Designee concerning SFP's response thereto.  Upon termination of this engagement, SFP shall return to FP Designee or (at the sole option of SFP) destroy all materials to the extent containing Information of a non-public nature received from FP Designee, the Company and/or the Receiver in the course of the engagement with respect to the Services under this Agreement, and any copies thereof that it may have made or received.  Notwithstanding the foregoing, SFP and its Representatives shall be permitted to retain such copies of the Information as are necessary to meet, or demonstrate compliance with, any legal or regulatory requirements or internal audit or internal compliance requirements, or copies created pursuant to automatic archiving and back-up procedure.  Any Information that is retained in accordance with the immediately preceding sentence, shall remain confidential, subject to the terms of this Agreement until the termination of this Section 8.  The FP Designee and the Company agree to take necessary actions to ensure compliance with applicable laws relating to privacy and/or data protection, and acknowledges that SFP is not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.  Notwithstanding anything to the contrary in this Agreement, SFP may mention the FP Designee and the Company, and provide a general description of the engagement, in its client lists and marketing materials.  SFP further agrees and acknowledges that the provisions of this Section 8 are, in view of the nature of the business of the FP Designee and the Company, reasonable and necessary to protect the legitimate interests of the FP Designee and/or the Company, that SFP's violation of any of the covenants or agreements of this Section 8 may cause irreparable injury to the FP Designee or the Company, that the remedy at law for any violation or threatened violation thereof may be inadequate and that the FP Designee and/or the Company shall be entitled to seek temporary and permanent injunctive or other equitable relief as it may deem appropriate without the accounting of all earnings, profits, and other benefits arising from any such violation, which rights shall be cumulative and in addition to any other rights or remedies available to the FP Designee and/or the Company.  SFP hereby agrees that in the event of any such violation, the FP Designee and/or the Company shall be entitled to commence an action for any such preliminary and permanent injunctive relief and other equitable relief.  This Section 8 shall terminate, and have no further force or effect, as of the date that is twenty-one (21) months after the earlier of (i) termination of this Agreement; or (ii) the expiration of the Post-Settlement Period.

9. <u>Liability Acknowledgment</u>.

(a) The Services are provided "as is" without warranty of any kind (whether express or implied), all of which warranties are hereby waived and disclaimed, and while an attempt is made to present appropriate factual data from a variety of sources, SFP makes no representation or assurances as to the accuracy of information or data published or provided by third parties used or relied upon. All express, implied and statutory warranties of any kind, including any warranties of accuracy, timeliness, completeness, merchantability and fitness for a particular purpose have been and are disclaimed by SFP relating to the Services; provided, however, that SFP agrees that any reports or other work product SFP prepares for or on behalf of the FP Designee or the Company under this engagement will be prepared with reasonable care. Neither SFP nor any of its Representatives (collectively with SFP, the "<u>Indemnified Persons</u>") shall have any liability (whether direct or indirect, in contract, equity or tort or otherwise) to FP Designee, the Company or the Receiver, or their respective Representatives relating to, arising out of or in connection with this engagement or any transactions or conduct in connection therewith, except to the extent that any losses, claims, damages, liabilities or expenses incurred by the FP Designee, the Company, or the Receiver are found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal to have resulted from such Indemnified Person's willful misconduct or gross negligence or intentional breach of this Agreement; provided, that for all purposes of this Agreement "intentional breach" of this Agreement by a party shall be deemed to include only such actions or omissions of such party that (i) are knowing and volitional actions or omissions of such party and (ii) are (as of the time of such action or omission) intended by such party to breach this Agreement. Without limiting the foregoing, SFP will not be liable to the FP Designee, the Company, or the Receiver or any of their respective Representatives for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or business opportunity). Further, SFP's liability relating to this engagement, in the aggregate, will in no event exceed an amount equal to the fees that SFP receives from the Company under this Agreement. No public written references to SFP may be made by or on behalf of the FP Designee, the Company, or the Receiver, without the prior written consent of SFP.

(b) SFP will use and rely upon the information supplied by or on behalf of the Company, as well as publicly available information, and SFP does not assume responsibility for independent verification of any information, whether publicly available or otherwise furnished to SFP, including, without limitation, any financial information, forecasts or projections, considered by SFP in connection with the rendering of Services. Accordingly, SFP shall be entitled to assume and rely upon the accuracy and completeness of all such information and is not required to conduct a physical inspection of any properties or assets, or to prepare or obtain any independent evaluation or appraisal of any assets or liabilities. With respect to any financial forecasts and projections supplied by or on behalf of the Company, SFP shall be entitled to assume that such forecasts and projections have been reasonably prepared on bases reflecting the best currently available estimates and judgments as to the matters covered thereby. While an attempt is made to present appropriate factual data from a variety of sources, SFP makes no representation or assurances as to the accuracy of information or data published or provided by third parties used or relied upon.

10. <u>Indemnity and Contribution</u>.

(a) In addition to the fees, expenses and costs payable to SFP as set forth in Section 4 of this Agreement, and as a material part of the consideration and inducement for SFP to furnish its Services under this Agreement, the FP Designee and the Company hereby agree that (subject to Section 10(d) hereof) they will, jointly and severally, indemnify, defend and hold harmless (including by paying defense costs (including, without limitation, attorneys' fees and expenses and including with respect to counter claims, contribution and/or subrogation) upon demand, reimbursing, and providing contribution to) the Indemnified Persons from and against any and all losses, costs and expenses (including attorneys' fees and expenses), damages, liabilities or claims ("Losses") arising out of, resulting from or relating to

(i) SFP's engagement under this Agreement, whether or not any pending or threatened action, claim, counterclaim, proceeding or investigation giving rise to such Losses is initiated or brought by the Company, the FP Designee, the Receiver or the Investor Steering Committee or by any other person on behalf of the Company, the FP Designee, the Receiver or the Investor Steering Committee, and whether or not in connection with any action, proceeding or investigation in which such Indemnified Persons are a party or (ii) SFP's efforts to collect any amount owed to it, or otherwise enforce its rights, under this Agreement, except in each case to the extent that such Loss is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal to have resulted from such Indemnified Person's gross negligence or willful misconduct or intentional breach of this Agreement; provided, however, that neither the Company nor FP Designee will be required to make any reimbursement or payment under the immediately preceding clause (ii) unless a court of competent jurisdiction determines in a final, non-appealable judgment that SFP was entitled to such reimbursement or payment.

(b)     If for any reason the foregoing indemnification is finally judicially determined to be unenforceable, then the FP Designee and the Company (subject to Section 10(d) hereof) shall contribute to the Loss (subject to the limitations on indemnification set forth in Section 10(a)) for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company, its securityholders and creditors (excluding for this purpose any debt owed by any entity comprising the Company to any other entity comprising the Company), and the FP Designee, on the one hand, and the party entitled to contribution, on the other hand, in the matters contemplated by SFP's engagement as well as the relative fault of the Company, its securityholders and creditors (excluding for this purpose any debt owed by any entity comprising the Company to any other entity comprising the Company), and the FP Designee, on the one hand, and the party entitled to such contribution, on the other hand. with respect to such Loss and any other relevant equitable considerations.  The Company and the FP Designee agrees that for the purposes hereof the relative benefits received, or sought to be received, by the Company, its securityholders and creditors (excluding for this purpose any debt owed by any entity comprising the Company to any other entity comprising the Company), and the FP Designee, and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company, its securityholders and creditors (excluding for this purpose any debt owed by any entity comprising the Company to any other entity comprising the Company), and the FP Designee, as the case may be, in connection with the Services which SFP has been engaged to perform to (ii) the fees paid or proposed to be paid to SFP in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall SFP or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to SFP pursuant to this Agreement.

(c)     The FP Designee and the Company agree that neither of them will settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding or investigation in respect of which indemnification or contribution could be sought hereunder by an Indemnified Person, unless they have included in such settlement, compromise or consent an unconditional release of each such applicable Indemnified Person.

(d)     The FP Designee's and the Company's obligations under this Section 10 shall survive any termination or expiration of this Agreement or SFP's engagement.  By signing below, the FP Designee and the Company agree to and acknowledge their respective obligations under this Section 10, and the Company and the FP Designee shall each be liable for the indemnity, payment of costs upon demand, reimbursement and contribution obligations under this Section 10; provided, however, that (i) from and after the approval (if any) by the Court of this Agreement as contemplated by Section 18 hereof, the Company shall not have any further obligations under this Section 10 unless and until the Settlement Date occurs (at which time the Company will be responsible for all obligations to Indemnified Persons under this Section 10); and (ii) FP Designee shall not have any obligations under this Section 10 prior to

the approval (if any) by the Court of this Agreement as contemplated by Section 18 hereof (at which time FP Designee will be responsible for all obligations to Indemnified Person under this Section 10); provided, further, that upon the occurrence of the Settlement Date, notwithstanding anything to the contrary in this Agreement, thereafter neither the FP Designee nor the Receiver, nor any of their respective Representatives (excluding, for the avoidance of doubt, the Company) shall be responsible or liable in any capacity for any obligations provided for in this Section 10, nor for any of SFP's invoices, fees, expenses, costs, damages or other liabilities or otherwise be liable to SFP or any other person or entity for any reason in connection with this engagement or this Agreement.

(e)     Notwithstanding anything to the contrary set forth in this Agreement, the provisions of this Section 10 shall not apply to any Other Engagements (as defined in Section 14(b) hereof).

11.    Retention in Chapter 11 Proceedings. So long as the Services have not yet been completed, the FP Designee and the Company agree that they shall use their respective commercially reasonable efforts to obtain authorization from the Bankruptcy Court in connection with any debtor in possession financing or cash collateral order in any bankruptcy case of the Company to pay, reimburse and indemnify SFP on the terms and conditions set forth in this Agreement, and that such obligations shall be entitled to administrative expense priority.

12.    Governing Law/Disputes/Jurisdiction. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the Florida (without giving regard to the conflicts of law provisions thereof). Each of the parties hereto consents and agrees that such party may be served with process by U.S. registered mail to the address of each party set forth herein. Any action or proceeding arising out of or relating to this Agreement shall be brought only in (a) the United States District Court, Middle District of Florida, Fort Myers Division, or (b) if that court does not have jurisdiction to adjudicate such action, then in a state or federal court situated in Palm Beach County, Florida. The parties irrevocably and unconditionally waive and agree not to plead, to the fullest extent permitted by law, any objection that they may now or hereafter have to (i) service of process as set forth herein or (ii) the laying of venue or the convenience of the forum of any action with respect to this Agreement in the United States District Court, Middle District of Florida, Fort Myers Division and the courts of the State of Florida located in Palm Beach County.

13.    Successors/Assigns. This Agreement shall be binding upon SFP, FP Designee and the Company, and the successors and permitted assigns of same. No party shall assign this Agreement without first (i) obtaining the consent of the other parties hereto, and (ii) requiring and receiving in writing that such assignee or successor is bound by the provisions of this Agreement.

14.    Non-Exclusivity.

(a)     Except as provided in Section 14(b), by entering into this Agreement, SFP shall not be in any way precluded from (i) entering into similar agreements with, or (ii) investing or owning any interest publicly or privately in, or (iii) developing a business relationship with, any corporation, partnership or other person or entity (including, but not limited to, any direct or indirect owner of the Company or competitor of the Company), whether or not such person or entity is engaged in the same or similar activities or lines of business as the FP Designee or the Company, and whether or not such entity is a competitor of the FP Designee or the Company. Nothing in this Section 14 shall in any way reduce or impair SFP's obligations under Section 8.

(b)     Except for any engagement or representation to which the FP Designee consents in writing (each, an "Other Engagement," which the parties agree will include SFP providing or arranging a loan to certain entities comprising the Company, which loan is proposed to be secured by certain assets

owned by Bossier Land Acquisition Corp. and Promise Hospital of Louisiana, Inc. and related assets, as applicable), SFP hereby agrees that from and after the date hereof and until the earlier of (i) the expiration of three (3) months after the Settlement Date and (ii) the termination of this Agreement, neither it nor any commonly controlled entity shall be engaged by or otherwise represent in any fashion any other person or entity (other than the FP Designee or the Company) in connection with the transactions contemplated by the Restructuring Plan or with respect to any matters involving the Company or any entity which is a part thereof.

15. <u>Entire Agreement/Amendments</u>. This Agreement represents the entire agreement and understanding between the parties. In addition, this Agreement shall supersede any and all other agreements, verbal or otherwise, between the parties concerning this subject matter. No amendments or modifications shall be binding upon either party unless made in writing and signed by SFP, the FP Designee and the Company. This Agreement is made for the benefit of the FP Designee, the Company, SFP and the persons entitled to indemnity herein, and their respective successors, assigns, heirs and representatives.

16. <u>Counterparts</u>. This Agreement may be executed in separate counterparts, and by facsimile or e-mail, all of which, taken together shall be considered to be an original document and one and the same Agreement.

17. <u>Representations</u>. Each party to this Agreement hereby represents and warrants to the other parties that (i) the execution, delivery and performance of this Agreement (a) has been duly and validly authorized by all necessary corporate or other action on the part of such party and (b) does not and will not contravene, conflict with or result in any violation of any provision of such party's organizational documents or any law, regulation or contract applicable to or binding on such party or its assets or properties; (ii) all consents, approvals, authorizations, permits of, filings with and notifications to, any governmental authority or any other person necessary for the due execution, delivery and performance of this Agreement by such party have been obtained or made and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority is required in connection with the execution, delivery or performance of this Agreement by such party; (iii) this Agreement constitutes a legal, valid and binding obligation of such party enforceable against it in accordance with its terms, subject, as to enforceability, to general principles of equity; and (iv) in the case of the Company, the Company has not incurred any obligation, commitment, restriction or liability of any kind, and is not contemplating or aware of any obligation, commitment, restriction or liability of any kind, in either case which would reasonably be expected to have a material adverse effect on the ability of the Company to enter into and perform its obligations under this Agreement; <u>provided</u>, <u>however</u>, that the FP Designee's representations and warranties under this Section 17 with respect to authorization, execution and delivery of this Agreement are subject to Section 18. Without limiting the foregoing, SFP hereby represents and warrants to the other parties that the Investor Steering Committee has consented to SFP entering into this Agreement, and simultaneous with the execution of this Agreement SFP shall provide written evidence of the foregoing Investor Steering Committee consent to the FP Designee.

18. <u>Court Approval</u>. The parties acknowledge and agree that the Receiver shall file this Agreement with the court in the Receivership Litigation (the "<u>Court</u>") to request that the Court approve the FP Designee entering into this Agreement and approve the payment of the fees and expenses to SFP provided for herein, and the FP Designee agrees to support the foregoing in any such pleadings. In the event that the Court does not approve the FP Designee entering into this Agreement, then notwithstanding anything to the contrary set forth in the Agreement, this Agreement shall automatically be terminated simultaneously therewith, but the provisions of Sections 8, 9 and 10 of this Agreement shall continue to apply in accordance with their terms.

19. <u>Notice.</u>  Any notice, demand or communication required, permitted or desired to be given hereunder shall be in writing and deemed given when delivered either personally, by overnight mail, regular mail or by prepaid certified mail, return request, addressed as follows, by email (with receipt confirmed by reply email) to the applicable email addresses specified below, or at such other addresses as the parties may designate by written notice in the manner aforesaid (provided that notice of a change of address shall be effective only upon receipt) to:

| | |
|---|---|
| If to SFP: | Specialty Finance Partners LLC<br>7605 Winterberry Place<br>Bethesda, MD  20817<br>Attention: Keith Reuben<br>kreuben1@gmail.com |
| With a copy to: | Specialty Finance Partners LLC<br>5407 Duvall Drive<br>Bethesda, MD  20816<br>Attention:  Dean Graham<br>deangraham88@gmail.com |
| With a copy to: | Latham & Watkins LLP<br>555 Eleventh Street, NW  Suite 1000<br>Washington, DC  2004<br>Attention:  David I. Brown<br>david.brown@lw.com |
| If to FP Designee: | Founding Partners Designee, LLC<br>c/o Daniel S. Newman, Receiver<br>One Biscayne Tower<br>2 South Biscayne Boulevard, 21st Floor<br>Miami, FL  33131 |
| with a copy to: | Broad and Cassel<br>7777 Glades Road, Suite 300<br>Boca Raton, FL  33434<br>Attention:  David J. Powers, P.A. |
| If to the Company: | Sun Capital, Inc., Sun Capital Healthcare, Inc.,<br>Promise Healthcare, Inc.<br>Success Healthcare, LLC<br>999 Yamato Road, 3rd Floor<br>Boca Raton, FL 33431<br>Attention:  Chief Executive Officer |
| With a copy to: | Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299<br>Attention:  Vincenzo Paparo |

[*Remainder of page intentionally blank.*]

Execcution Copy

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

| SPECIALTY FINANCE PARTNERS, LLC | FOUNDING PARTNERS DESIGNEE, LLC | SUN CAPITAL, INC., |
|---|---|---|
| By:_____ <br> Name:  Keith Reuben <br> Title:  Authorized Signatory | By:_____ <br> Name:  Daniel S. Newman, Receiver <br> Title:  Manager | By:_____ <br> Name:  Peter Baronoff <br> Title:  Authorized Signatory |

| SUN CAPITAL HEALTHCARE, INC. | PROMISE HEALTHCARE, INC. | SUCCESS HEALTHCARE, LLC |
|---|---|---|
| By:_____ <br> Name: Peter Baronoff <br> Title:  Authorized Signatory | By:_____ <br> Name:  Peter Baronoff <br> Title:  Authorized Signatory | By:_____ <br> Name:  Peter Baronoff <br> Title:  Authorized Signatory |

[*Signature Page to SFP Agreement for Services*]

DC\2339504.14